UNITED STATES of America,
Plaintiff,

v.

CARTER PRODUCTS, INC., and American Home Products Corporation,
Defendants.

United States District Court
S. D. New York.

March 29, 1961.

Richard B. O'Donnell, Atty., Dept. of Justice, Antitrust Division, New York City, John D. Swartz, New York City, John J. Galgay, Bernard Wehrmann, J. Paul McQueen, New York City, of counsel.

Breed, Abbott & Morgan, New York City, for defendant Carter Products, Inc., Edward J. Ross, Egon R. Gerard, New York City, of counsel.

Cravath, Swaine & Moore, of New York City, for defendant American Home Products Corp., Oliver C. Biddle, Harry H. Voigt, New York City, of counsel.

DAWSON, District Judge.

American Home Products Corporation (hereinafter referred to as "American") on May 3, 1960, and Carter Products, Inc. (hereinafter referred to as "Carter"), on June 22, 1960, respectively, served identical supplemental interrogatories on the Government, as plaintiff, in United States v. Carter Products, Inc. The complaint, filed on January 27, 1960, instituted a civil action under Section 4 of the Act of Congress of July 2, 1890, 15 U.S. C.A. § 4, commonly known as the Sherman Act. Each defendant has served and filed a number of interrogatories, pursuant to Rule 33 of the Federal Rules of Civil Procedure, 28 U.S.C.A. seeking further particulars of various allegations of the complaint. Objections to those original interrogatories are not now before the Court. The Government, at this time, is moving only against the supplemental interrogatories.

The supplemental interrogatories are not directed to the substantive issues raised by the complaint and answers. Rather, defendants seek further information concerning the use made by the Government of the processes of the Federal Grand Jury for the Southern District of New York, in whose name subpoenas *duces tecum* were issued and served on each defendant "in regard to an alleged violation of the Federal antitrust laws" in December 1958, and in June and November 1959.

Supplemental interrogatories Nos. 1 to 3 seek to discover whether the Government used the Grand Jury process to obtain evidence purely for the purpose of a civil proceeding, or whether the Government used any portion of the Grand Jury process for such purpose.

Supplemental interrogatories Nos. 4 and 5 are aimed at discovery of whether the Government has violated any of the traditional requirements of secrecy and non-disclosure of Grand Jury proceedings and testimony.

Supplemental interrogatories Nos. 6 and 7 appear to be aimed at discovering means whereby the defendants might verify the accuracy of the answers to the preceding interrogatories.

The Government, with the exception of supplemental interrogatory No. 6, has objected to all or part of each of the interrogatories. Only these objections are now presented to the Court and it is on these that the Court must rule.

### Factual Background

The Grand Jury was convened on October 28, 1958 and discharged on February 9, 1960. During that period Carter

and American were extensively investigated. Testimony was received from time to time after the convening of the Grand Jury until December 9, 1959. But the Jury was not requested to return an indictment, nor was it ever polled concerning the possibility of returning such an indictment.

The Government has stated in its answers to the supplemental interrogatories that the decision not to proceed criminally was made for the first time on January 20, 1960; that the decision to proceed civilly was made on January 25, 1960, and that after January 20th no additional information was received by the Grand Jury. Despite these assertions, defendants contend that the Government has improperly used criminal procedures to elicit evidence for a civil case.

The Government claims that the decision not to proceed criminally was made after fifteen months of investigation on January 20, 1960 "for the first time." It further claims that the decision to proceed civilly was made "for the first time" on January 25, 1960. Two days thereafter, on January 27th, the civil complaint had already been drawn up, had been properly signed and was filed and served. Defendants challenge the reliability of these contentions and offer in support of their charge the dates themselves. It is not for this Court to finally determine whether in fact these statements are trustworthy, nor is it for this Court to determine which party is in the right. That decision must come at a later date. However, the interesting chronology * gives Carter and American some standing to claim that pursuant to the rule as set forth in United States v. Proctor & Gamble Co., 1958, 356 U.S.

677, 78 S.Ct. 983, 2 L.Ed.2d 1077, they may be entitled to discover and inspect the Grand Jury transcript.

### The Law

Since this motion is founded on defendants' contentions that the purpose of the Grand Jury was subverted if it was used as a means for collecting information for a civil prosecution, and that the Government may have violated Rule 6(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. concerning the secrecy of the Grand Jury proceedings and the concomitant requirements of non-disclosure, it falls within the scope of the Proctor & Gamble cases. The question of improper use of the Grand Jury, and the effect of such a practice was extensively litigated in that case. The fruits of that litigation control many of the matters now in issue.

The backdrop against which Proctor & Gamble was decided consisted of two opposing forces: the secrecy of the Grand Jury and the full disclosure principles of the Federal Rules of Civil Procedure.

██ Under the Rules of Civil Procedure, the Government, as a litigant, is to be treated just the same as a private individual with reference to the rules of discovery. United States v. Proctor & Gamble Co., 1958, 356 U.S. 677, 681, 78 S.Ct. 983; citing Bank Line Ltd. v. United States, 2 Cir., 1947, 163 F.2d 133, 138. See, Berger & Krash, Government Immunity from Discovery, 59 Yale L. J. 1451 (1950).

In opposition to these liberal rules stands the interdict against invading the traditional secrecy of the Grand Jury. The reasons generally given for this rule of secrecy are summarized in the often

---

\* Cf. United States v. Proctor & Gamble Co., D.C.N.J.1959, 174 F.Supp. 233, 238, where the court said:

"\* \* \* [W]e must bear in mind that, within less than three weeks after the Grand Jury was discharged, the carefully drawn and voluminous civil complaint herein was filed. True, that does not necessarily prove that the decision to abandon an indictment was not made until after the Grand Jury was discharged, but the contrary may also have been the fact, and it is this 'finding' of fact which our highest court has determined to be crucial, in order to do justice between the parties."

quoted United States v. Rose, 3 Cir., 1954, 215 F.2d 617, 628–629:

> "(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

To these the Supreme Court in United States v. Proctor & Gamble adds:

> "[Another] is to encourage all witnesses to step forward and testify freely without fear of retaliation. The witnesses in antitrust suits may be employees or even officers of potential defendants, or their customers, their competitors, their suppliers. The grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow." 356 U.S. 677, 681–682, 78 S.Ct. 983, 986.

See, In re April 1956 Term Grand Jury, 7 Cir., 1956, 239 F.2d 263, 271–273. United States v. Proctor & Gamble Co., 1958, 356 U.S. 677, 681, 78 S.Ct. 983, 2 L.Ed.2d 1077, citing United States v. Johnson, 1943, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 and Costello v. United States, 1956, 350 U.S. 359, 362, 76 S.Ct. 406, 100 L.Ed. 397; United States v. Brennan, D.C.Minn.1955, 134 F.Supp. 42, 52.

■ But this doctrine of Grand Jury secrecy may be waived by the Government. Thus it was held in United States v. Ben Grunstein & Sons Co., D.C.N.J. 1955, 137 F.Supp. 197 that where Grand Jury testimony and the resulting indictment were referred to and employed in subsequent civil proceedings, the defendant would have the right to obtain copies of so much of the Grand Jury minutes as referred to the portions employed in the civil proceedings and would have the further right to any testimony given by witnesses before the Grand Jury, if such witnesses were later used in the civil proceeding. It may also be that if the Government makes an improper disclosure of Grand Jury minutes, the defendant in a subsequent action may be entitled to see that portion of the transcript. See United States v. Byoir, D.C. N.D.Tex.1945, 58 F.Supp. 273.

It was in the midst of these crosswinds that Proctor & Gamble was decided. The conflict was resolved in this fashion:

> '* * * If the prosecution were using [criminal procedures to elicit evidence in a civil case] it would be flouting the policy of the law * * *.

> "We cannot condemn the Government for any such practice in this case. There is no finding that the grand jury proceeding was used as a short cut to goals otherwise barred or more difficult to reach. It is true that no indictment was returned in the present case. But that is no reflection on the integrity of the prosecution. For all we know, the trails that looked fresh at the start faded along the way. What seemed at the beginning to be a case with a criminal cast apparently took on a different character as the events and transactions were disclosed. The fact that a criminal case failed does not mean that the evidence obtained could not be used in a civil case. It is only when the criminal procedure is subverted that 'good cause' for *wholesale* discovery and production

of a grand jury transcript would be warranted. No such showing was made here." 356 U.S. at pages 683, 684, 78 S.Ct. at page 987.

The Court denied the defendant access to the Grand Jury transcript because a sufficient showing was not made on the record and remanded the case to the lower court.

When the case returned to the District Court, Judge Hartshorne, in light of the Supreme Court decision, phrased the issue as follows: "The critical question thus is, when this case first became only 'a civil case.'" United States v. Proctor & Gamble Co., D.C.N.J.1959, 174 F.Supp. 233, 235. The law, as seen by Judge Hartshorne, was that use of a Grand Jury to elicit evidence for a subsequent civil proceeding would be to flout the law. Thus any advantage thereby improperly obtained by the Government must be neutralized. This was to be done by giving the opposing party, the defendant, portions of the Grand Jury transcript which were improperly obtained. As Judge Hartshorne there said:

"* * * It would be as unfair to permit the Government, after having finally decided not to proceed criminally, to continue to use the unique, and solely criminal, functions of a Grand Jury for a solely civil purpose, as it would be to permit the Government to do this same thing when, from the beginning, it had that same, solely civil, intention. The subversion of this ancient criminal procedure, for the time that it exists, is the same in the one case as in the other." 174 F.Supp. at page 236.

The District Court then concluded that the proper method of determining whether the Grand Jury proceeding had been used as a short cut to goals otherwise barred or more difficult to reach would be by means of interrogatories. These interrogatories might be aimed at finding out at what point the decision not to proceed criminally and to proceed civilly was made.

As a result of the interrogatories it was determined that the Attorney General had decided not to seek an indictment on November 14, 1952. The court therefore ruled that all Grand Jury testimony taken after that date be turned over to the defendants. United States v. Proctor & Gamble Co., D.C.N.J.1959, 175 F.Supp. 198.

Thereafter defendants attempted to prove that the decision to proceed civilly was initially made before the institution of the Grand Jury proceedings and that, in fact, a civil prosecution was the sole intention of the Antitrust Division. It therefore sought certain government documents and memoranda. The Government defended against this search on the grounds, *inter alia*, of executive privilege. Judge Hartshorne, however, ruled that these documents were necessary to prove "a point made crucial for defendants as 'the law of the case' by the decision of the United States Supreme Court herein." United States v. Proctor & Gamble Co., D.C.N.J.1960, 25 F.R.D. 485, 487. The court then held:

"* * * To the extent that these documents do not show mere discussion of reasons or advices from subordinates, but do have a direct bearing on a decision of the Department of Justice, pro or con, to use the Grand Jury for a solely civil purpose, the Supreme Court itself has made such evidence crucial to the rights of the parties, and it is not 'appropriate' for the Government's claim of privilege to overcome the disclosure of such crucial evidence." 25 F.R.D. at page 490.

The latest ruling by Judge Hartshorne in this series of opinions has recently appeared. United States v. Proctor & Gamble Co., D.C.N.J.1960, 187 F.Supp. 55. The ultimate question is framed as follows:

"The resultant question now before this Court thus is, whether or not, from the very beginning, the prosecution had been using criminal

procedures to elicit evidence in a civil case.

"The crux here is, what did the Department of Justice intend, seek, and therefore do, when it called and actually used the Grand Jury?" 187 F.Supp. at page 57.

The court then went on to find that the Grand Jury process was actually misused regardless of the undisclosed intent of various parties. Because of this misuse in fact, Judge Hartshorne ordered that the Grand Jury transcript be turned over to the defendants.

■ In light of the Proctor & Gamble decisions, when the decision not to proceed criminally and when the decision to proceed civilly were made are proper, if not crucial, lines of inquiry. If defendants are able to establish that these decisions were made prior to the termination of the Grand Jury's taking evidence, then any information gleaned after that time might be turned over to the defendants.

■ It appears that the Government's contention as to the presumption of regularity merely beclouds the issue. This presumption was set forth in United States v. Chemical Foundation, Inc., 1926, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131. The Court said:

"* * * The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties * * *." 272 U.S. 1, at pages 14–15, 47 S.Ct. at page 6.

This presumption has often been referred to. United States v. Zuskar, 7 Cir., 1956, 237 F.2d 528, 534; Cooper v. United States, 8 Cir., 1956, 233 F.2d 821, 824; Hammond v. Hull, 1942, 76 U.S.App.D.C. 301, 131 F.2d 23, 25. But it must be recognized that the presumption of regularity is but a mere presumption. As such it is effective, like all other presumptions of fact, only in the absence of evidence to the contrary. Where, as here, defendants seek to establish evidence to the contrary, then that presumption can certainly not deprive them of that right. United States v. Proctor & Gamble Co., D.C. N.J.1959, 174 F.Supp. 233, 237.

The crucial issue remains: When was the decision not to proceed criminally made? When was the decision to proceed civilly made?

### The Disposition

■ Supplemental interrogatory No. 1(c) asks the name and address of each person responsible for making the decision not to seek an indictment, and supplemental interrogatory No. 2(b) asks the name and address of each person who assisted in the preparation of the complaint commencing the civil action herein. By deposing these persons defendants may be able to establish that the decision not to proceed criminally and to proceed civilly were made before termination of the Grand Jury proceedings, i. e., before termination of the taking of evidence before the Grand Jury. If that is the case, defendants might be entitled to any such improperly obtained evidence in the Grand Jury minutes. This question has been made crucial by the Proctor & Gamble cases. The objections to supplemental interrogatories 1(c) and 2(b) are therefore overruled.

Supplemental interrogatory 1(d) asks for the contents of every recommendation or report made in reaching the decision not to proceed criminally. Subsections (i) and (ii) go on to expand the demand of interrogatory 1(d). Despite Judge Hartshorne's decision in United States v. Proctor & Gamble Co., D.C.N.J.1960, 25 F.R.D. 485, at this juncture supplemental interrogatory 1(d) is too broad and all encompassing. The pertinent information sought by 1(d) may be obtained by deposing the persons whose names will be supplied in the answer to supplemental interrogatory 1(c). Thereafter a more limited and specific interrogatory may be properly put. The objection to supple-

mental interrogatory 1(d) is therefore sustained. See, Kaiser Aluminum & Chemical Corp. v. United States, 1958, 157 F.Supp. 939, 945–946, 141 Ct.Cl. 38. Supplemental interrogatory 1(e) seeks the name and address of each person who "since that decision was made [the decision not to seek an indictment] has communicated it to others or reduced it to writing, specifying also in connection with each such communication or recording * * *."; the interrogatory then goes on to demand further details. This interrogatory goes too far afield. Actions taken by persons in transmitting a decision not to proceed criminally, after that decision has been made, appear to be irrelevant to the issue. The issue is when, in fact, was that decision made. Once determined, that date need merely be measured against the dates on which evidence was taken before the Grand Jury. Accordingly, the objection to supplemental interrogatory 1(e) is sustained.

■ The defendants, in supplemental interrogatory 2(c) ask "the date, present whereabouts and present custodian of each draft of the complaint herein." This request is not burdensome. A review of the drafts of the complaint may reveal that the decision to proceed civilly was made prior to January 25, 1960. This is a highly pertinent issue. The plaintiff's objection to supplemental interrogatory 2(c) is overruled.

■ Supplemental interrogatory 3(e) seeks the names and addresses of persons assigned to the investigation conducted by the Grand Jury, all persons who presented evidence to the Grand Jury and all persons authorized to see or hear evidence presented to the Grand Jury. These inquiries are relevant in that they may lead to the identity of persons to be deposed by defendants. The objection is overruled.

■ The defendants seek to establish that Grand Jury testimony was improperly disclosed. In pursuit of evidence they request answers to supplemental interrogatories 4 and 5. Those interrogatories deal with the physical location and the name, address and office of the custodian of all documents produced in response to subpoenas. Similar information is requested concerning all transcripts of oral testimony taken before the Grand Jury. Supplemental interrogatories 4 and 5 also ask the name and address of each person authorized by the Attorney General to see the foregoing documents and transcripts, whether any such documents have ever been copied, and, if so, which parts of such documents or transcripts have ever been copied. Another supplemental interrogatory, 4 (e) adds the direct question of whether there has been an improper disclosure of Grand Jury documents. The Government has answered 4(e) in the negative and has further answered 4(d) in the negative. (4(d) asks a similar question as to transcripts). This line of inquiry is at most of merely peripheral importance. If the defendants could establish that there had been certain improper disclosures, then it is still not clear what the effect of that might be. The Supreme Court in Proctor & Gamble has already said that the Government may use Grand Jury testimony and other evidence received by the Grand Jury in preparation of a civil proceeding, so long as the Grand Jury evidence, when initially taken, was aimed at an eventual criminal proceeding. Since the Government has already answered the ultimate questions, i. e., that there has been no improper disclosure, objections to the other portions of supplemental interrogatories 4 and 5 are sustained.

■ Supplemental interrogatory 7 asks for the authors, addresses, date, title and present whereabouts of any memoranda, correspondence or other documents relied upon in answering any interrogatory and the name and address of the person who now has custody or control thereof. This interrogatory seems to be directed toward the discovery of

further sources of evidence, such as the existence of documents and the names of persons having relevant facts. As such it is unobjectionable and the objection thereto is overruled. See, Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co., D.C.S.D.N.Y.1952, 12 F.R.D. 531, 537–538.

So ordered.