**UNITED STATES of America**
v.
**PENNSALT CHEMICALS CORPORA-
TION et al.**
No. 37123.

United States District Court
E. D. Pennsylvania.
Feb. 3, 1966.

Donald G. Balthis, John Neville, L. Barry Costilo, Jon D. Hartman, Dept. of Justice—Antitrust Division, Philadelphia, Pa., for plaintiff.

Dechert, Price & Rhoads, Philadelphia, Pa., for Pennsalt Chemicals Corp.

Duane, Morris & Heckscher, Philadelphia, Pa., for Allied Chemical Corp.

Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for Diamond Alkali Co.

Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Dow Chemical Co.

Drinker, Biddle & Reath, Philadelphia, Pa., for FMC Corp.

Saul, Ewing, Remick & Saul, Philadelphia, Pa., for Hooker Chemical Corp.

Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Olin Mathieson Chemical Corp.

Morgan, Lewis & Bockius, Philadelphia, Pa., for Pittsburgh Plate Glass Co.

Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for Wyandotte Chemicals Corp.

HIGGINBOTHAM, District Judge.

## OPINION AND ORDER

The instant matter is before this Court on a motion by the defendants to compel answers to interrogatories propounded by them to the plaintiff, the United States of America.

This is a civil antitrust suit which was commenced on December 24, 1964.[1] The suit arose as a result of an extended investigation by the Department of Justice of the defendant corporations and others, relative to the sale and distribution of chlorine, soda ash and caustic soda. That investigation began some four and a half years ago, and during that period two grand juries were impanelled.[2] Neither grand jury returned an indictment against any of the defendants.

The defendants are charged with unlawfully conspiring to eliminate price competition in the sale of chlor-alkali products in violation of section one of the Sherman Act.[3] The defendants wish to discover by the interrogatories, to which the government objects, whether the grand juries were impanelled, not for the purpose of prosecuting them criminally, but rather for the sole purpose of preparing for a civil suit. Alternatively, they wish to discover whether the grand jury investigation was continued after a decision was made not to proceed with a criminal action.

This issue is a crucial one, for the United States Supreme Court has ruled that where a grand jury has been utilized as a means of procuring information with the *sole* purpose of preparing a civil action against those being investigated, the individuals concerned are entitled to the discovery of some, or all, of the records of those proceedings. In United States v. Procter and Gamble Co., 356 U.S. 677, at page 683, 78 S.Ct. 983, at page 987 (1958), the Court said:

> If the prosecution were using that device [the use of a grand jury to uncover evidence to be used in a civil suit where no criminal prosecution is intended], it would be flouting the policy of the law.

In essence, the defendants argue that since the grand juries failed to return an indictment against them, they are entitled to ascertain whether the Government obtained information in violation of the doctrine of *Procter,* supra. They contend that the only means available to them by which this fact can be established, is by propounding interrogatories to the government under Rule 33 of the Federal Rules of Civil Procedure. They argue that under Rule 33 they are entitled to have these interrogatories answered as a matter of right. In short, they deny that they must make any showing of "good cause" as the government contends.

If the defendants can establish any subversion of the grand jury, they intend, at the very least, to seek discovery of all or part of the transcripts of the grand jury proceedings. At oral argument, counsel for the defendants made it clear that, in addition to the transcripts, they would seek to have this Court rule that:

> * * * any such evidence * * * be viewed by the Court as tainted or poisoned to use Judge Hand's meta-

---

1. This action was assigned to me on July 14, 1965 as a protracted case.

2. The following excerpts are taken from answers to interrogatories filed by the United States on January 13, 1966:
*Answer to Interrogatory 1(a)*—Two grand juries were impanelled in the Eastern District of Pennsylvania to investigate alleged violations of the antitrust laws as indicated in this interrogatory.

*Answer to Interrogatory 1(b)*—The first grand jury was impanelled May 9, 1961. The second grand jury was impanelled November 14, 1962.
*Answer to Interrogatory 1(c)*—The first grand jury was discharged November 7, 1962. The second grand jury was discharged May 13, 1964.

3. 15 U.S.C.A. § 1.

phor in the Judith Coplan case, just as much as if it had been obtained by any other illegal means such as the use of wiretaps or a hidden microphone.[4]

Thus it is clear that much is at stake, and that any decision made by this Court will have serious implications for the conduct of discovery in cases such as this where a grand jury has been impanelled fails to return an indictment, and a civil suit is subsequently brought against the parties investigated.

After carefully examining the numerous authorities cited by the parties, I have concluded that neither the government nor the defendants are entitled to a total endorsement of the positions they assert. That is, I find that the plaintiff cannot be sustained in its assertion that it need not answer any interrogatories, and similarly, the defendants cannot receive sanction for the wholesale probe which they seek through the interrogatories in issue. Rather, I hold that certain interrogatories must be answered on the public record, and that documentation of these answers must be submitted to this Court alone, *in camera*.

If, upon receipt of the documents, the Court concludes that they support the answers noted on the public record, they will be returned to the government without inspection by the defendants. Should I conclude that these documents must be turned over to the defendants, the government will receive prior notice of my intention. Thus it will have an opportunity to decide whether it will test separately such a ruling.[5]

## I.

## THE RELEVANCE OF THE PROCTER & GAMBLE AND CARTER DECISIONS.

The defendants rely on the decisions in *Procter*, both in the Supreme Court and in the District Court on remand, and also on the ruling in United States v. Carter Products, Inc., 27 F.R.D. 243 (S.D.N.Y.1961). They argue that those cases support the relief which they seek in the instant matter. Thus, I cannot proceed to a disposition of this case without an analysis of the factors which contributed to the holding in those cases.

The *Procter* case came before the Supreme Court in a different posture than that in which the matter before us now rests. There the District Court had dismissed the government's suit for failing to provide the defendants with a grand jury transcript. The reasons for the trial court's action in granting discovery were stated by the Supreme Court at pages 678–679 of its opinion, 78 S.Ct. at pages 984–985:

> * * * The District Court granted the motion, ruling that appellees [Procter and Gamble, et al.] had shown 'good cause' as required by Rule 34. It rested on the ground that the Government was using the transcript in preparation for trial, that it would be useful to appellees in their preparation, that only in this way could appellees get the information. These reasons, the court held, outweighed the reasons behind the policy for maintaining secrecy of the grand jury proceedings.

The Supreme Court noted that the reasons adduced by the District Court for

4. Transcript of hearing July 8, 1965, page 21.

5. In Procter after the District Court had directed the government to produce the grand jury transcript and to permit the defendants to inspect and copy it, the government filed a motion which, in substance, requested that, if production were not made, the court would dismiss the complaint. Simultaneously the government moved in the District Court to stay the order pending the filing of an appeal. When the government refused to produce the transcript the District Court entered judgment dismissing the suit which it had brought. The government then appealed that judgment to the United States Supreme Court bringing into question the correctness of the trial court's order permitting discovery.

ordering production were important ones, but held that they fell short of "compelling necessity." The Court suggested that the judgment of the District Court might have been influenced by the fact that the government was using "criminal procedures to elicit evidence in a civil case," and then held that if this were true, it was in violation of the law. Yet, it cannot be overemphasized that the Court did not find that any such practice had occurred in that case. For it said also that, (at pages 683–684, 78 S.Ct. at page 987):

> We cannot condemn the Government for any such practice in this case. There is no finding that the grand jury proceeding was used as a shortcut to goals otherwise barred or more difficult to reach. It is true that no indictment was returned in the present case. But that is no reflection on the integrity of the prosecution. For all we know, the trails that looked fresh at the start faded along the way. What seemed at the beginning to be a case with a criminal cast apparently took on a different character as the events and transactions were disclosed. The fact that a criminal case failed does not mean that the evidence could not be used in a civil case. It is only when the criminal procedure is *subverted* that "good cause" *for wholesale discovery* and production of a grand jury transcript would be warranted. No such showing was made here. (Emphasis added.)

It is crucial at this juncture to make clear what issues were actually resolved by the Supreme Court in *Procter*. The Court decided that (1) the mere fact that the government had used a grand jury transcript to prepare for a civil antitrust suit was not sufficient grounds for its production, even though the use of that transcript would circumvent the delay and expense involved in discovery, and (2) that only when the grand jury processes had been "subverted" by the use of this device to obtain evidence solely for a civil suit, was the "wholesale discovery" and "production" of that

transcript warranted. As to this type of proceeding, the Court did not determine then, and has not subsequently enunciated the rules governing, and the circumstances under which defendants will be allowed to delve into government files in order to lay the foundation for discovery of grand jury records. Thus we have at stake not only the crucial issue of the reasons behind the traditional secrecy of grand jury proceedings and matters relating thereto, but also important questions of policy as to the separate responsibility of the judicial and executive branches, and even more crucial the integrity of the executive decision making process. These questions were left unresolved by the Supreme Court in *Procter* and greatly affect my decision today. Although these questions were before the district courts which decided the subsequent litigation in *Procter* and in *Carter*, there has been, to my knowledge, no appellate pronouncements on these questions. Thus, the decisions in those cases, while they establish guidelines, are not binding on this Court.

## II.

### STANDARD FOR INQUIRY INTO POSSIBLE ABUSE OF GRAND JURY PROCESS.

In many respects, the answer to this problem depends upon whether any preliminary showing or significant probative evidence must be first presented before the defendants may make inquiry as to the plaintiff's prior utilization of the grand jury process. In capsule form, the polar positions here are: (1) the government's assertion that defendants *must have evidence* ("beyond mere suspicion") of wrongdoing before the government is required to answer interrogatories, and (2) the defendants' insistence that even *without such proof* they have the right to inquire through interrogatories whether there has been an abuse of the grand jury process.

If, as a condition precedent for such inquiry the defendants must have first presented evidence indicating a "sub-

version" of the "criminal procedure"[6] by the improper use of the grand jury, then defendants have failed here to meet that burden of proof. Accordingly, they would not now be entitled to have the interrogatories answered. In this matter, the only evidence presented to date is that two grand juries have investigated defendants and no indictments have been returned. The Supreme Court has held that the fact "that no indictment was returned * * * is no reflection on the integrity of the prosecution."[7] However, the defendants insist that there is no preliminary burden upon them to first establish some evidence of wrongdoing before the interrogatories must be answered; instead, defendants assert that they have the absolute "right to inquire whether they have been deprived of fundamental protections guaranteeed them by the policy of the law through abuse of the grand jury process." If defendants are correct that they have no preliminary burden to establish wrongdoing, then they are clearly entitled to have the interrogatories answered.[8] Accordingly despite their voluminous briefs, since they start with different premises, plaintiff and defendants fail to meet each other on common ground.

There is no complete precedent available to this Court because: (1) in *Procter*—after it was remanded to the District Court—it was established that the government was on record as having erroneously assumed that the use of the grand jury process for civil purposes solely,[9] was lawful; in contrast, here the government asserts that since *Procter* it has recognized that grand juries may not be so utilized and has accordingly abandoned the practice;[10] (2) in *Carter*, the government had answered one set of interrogatories and thus through those answers had stated that the first decision to proceed civilly was made (on January 25, 1960) only five days after its decision "not to proceed criminally." Judge Dawson stated that defendants had standing to claim "they may be entitled to discovery and inspect the grand jury transcript" because of *"the interesting chronology"* where within two days after the decision was first made to file a civil action the civil complaint was in fact "drawn up", "properly signed", and "filed and served" on January 27, 1960. (27 F.R.D. 243, 245.) In contrast except for the interrogatories noted in footnote

6. 356 U.S. 681, at 684, 78 S.Ct. at 983.

7. Id. at page 683, 78 S.Ct. at page 987.

8. Brief of defendants—November 10, 1965, page 24. At oral argument before this Court on July 8, 1965, Mr. Oliver C. Biddle, representing the defendants made the following observations: " * * * we do submit that the government has the duty, and in my opinion should welcome it, to satisfy us and this Court that it has not abused the grand jury process which it has so liberally used to gather the evidence [which] it undoubtedly intends to use against us in this suit, and the proper use of which is its only justification for keeping exclusive possession of the grand jury transcript." (Transcript, p. 32.)

9. The following is an excerpt from Judge Hartshorne's opinion in United States v. Procter & Gamble Company, 187 F. Supp. 55 (D. New Jersey, Sept. 22, 1960). It should be noted that, until the enunciation of the above principles of law by our highest Court in this case, the United States Department of Justice had held the view that the law was to the contrary, and that the Government had the legal right to use the Grand Jury simply to elicit evidence in and for a civil case. Such is the testimony taken in this case of former Attorney General McGrath, who held that office when the Grand Jury in question was impanelled, and such is the memorandum written at that time by Victor H. Kramer, the then head of the Litigation Section of the Antitrust Division of the Department of Justice. It is also the public statement at that time of former Assistant Attorney General, now Judge, Barnes. (Testimony, May 12, 1955, before Special Antitrust Subcommittee of the Judiciary Committee, House of Representatives.)

10. The government has submitted affidavits of Robert L. Wright, First Assistant to the Assistant Attorney General in charge of the Antitrust Division, and Lewis Bernstein, Chief of the Special Litigation Section of the same Division, attesting to these facts.

2, the government has refused to answer any other interrogatories in this matter, and thus the record is barren of any probative evidence from which rational inferences may be drawn as to whether the grand jury processes were abused. The record does not even provide a basis for one to ascertain whether there is a similar "interesting chronology" in this case.[11]

The reasons for the government's position that there must first be established some evidence of wrongdoing before it should be required to answer the interrogatories are as follows: (a) it contends that it is entitled to a presumption of regularity, (b) it contends that the doctrine of executive privilege requires that no answers be given, (c) it argues that the information sought constitutes the "work product" of its lawyers, and (d) that to permit discovery would violate the attorney-client privilege. In short the government argues that despite the liberal interpretation given to the discovery rules the Federal Courts have authority to limit the scope of discovery in appropriate cases and that this is such a case. See 4 Moore, Federal Practice, § 33:02 at 2260–61 (2nd ed. 1963).

In addition to denying that the information is privileged, the defendants' major assertion in support of their right to inquire is that the government has the information and, if it has not abused the grand jury process, it should have no fear of presenting proof of the legality of its actions.

A. *Presumption of Regularity.*

The government argues strenuously that there is a presumption of regularity in governmental activities. It contends that this presumption was recognized by Judge Hartshorne in *Procter* and by Judge Dawson in *Carter,* supra. In support of its position the government argues that in *Procter* the Court was per-

suaded by the fact that the Department of Justice was then on record as using grand juries for the sole purpose of securing evidence for use in later civil actions,[12] and that in *Carter* the Court was impressed by the "interesting chronology" between the time when the grand jury was dismissed and the civil complaint filed. It is true that the two courts did place some emphasis on the above facts alluded to by the government, however, it is by no means clear that those unique facts constituted the sole basis of their decisions. In one of the several opinions which he entered in this case Judge Hartshorne said:

> \* \* \* this presumption or [sic] regularity, being a mere presumption, is effective, like other presumptions of fact, only in the absence of evidence to the contrary. Here what defendants seek is to ascertain if there is evidence to the contrary. *They cannot be deprived of this right by that presumption.* (174 F.Supp. 233 at page 237, D.New Jersey, June 11, 1959.) (Emphasis added.)

This language was quoted by Judge Dawson in *Carter* with approval. If it was not clear in *Procter,* it seemed clearer in *Carter* that one of the crucial factors in the case was the fact that the information sought was more probably than not, in the exclusive possession of the government.

In further support of its position the government argues that other than their suspicion based on the fact that no indictment was ever returned against them, the defendants have no reason to believe that any wrongdoing has occurred. To support this proposition the government relies on Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958). In that case the petitioner sought a district court investigation of a grand jury

---

11. Of course the answer to Interrogatory 1(c) notes that the second grand jury was discharged May 13, 1964, and the record establishes that this suit was commenced on December 24, 1964; however, these dates do not answer the question of whether the government first made its decision to proceed civilly or when it first made its decision not to proceed criminally.

12. See Footnote 9.

proceeding (including testimony given in that proceeding), because he suspected that the government had used testimony obtained therein to secure an indictment from a later grand jury. The Supreme Court denied his request, holding that (at page 349, 78 S.Ct. at page 317):

> The affidavits submitted in support of and in opposition to the motion for the requested hearing disclosed, as found by the trial court and the Court of Appeals, with which findings we agree, *that petitioners had no reason, beyond suspicion, to believe that the 1953 grand jury considered any of the materials produced by petitioners before the 1952 grand jury. These facts make clear that petitioners laid no foundation for the holding of a protracted preliminary hearing (at which they would, in effect, take the depositions of the Government's witnesses)* to determine whether there was any substance to their suspicion that some direct or derivative use may have been made by the 1953 grand jury or materials produced by petitioners before the 1952 grand jury. (Emphasis added.)

*Lawn* is easily distinguished from the instant case because, as the above quoted passage clearly discloses, the petitioners there sought, in effect, to discover the proceedings of the grand jury itself. Thus the reference to their "having laid no foundation," was to the attempt to secure grand jury testimony, whereas here the defendants seek to lay the foundation to determine whether they are entitled to proceed further; in short —information upon which they may be entitled to make a subsequent claim to secure the transcripts of the grand juries. It is therefore clear that *Lawn* is not authority for the government's position here. As I have noted previously, in *Carter*, the government had already answered some of the interrogatories propounded by the defendants. Thus at the time *Carter* was argued, the defendants already knew when the decision to seek solely a civil remedy was made. Even if the Court's decision there was based on a showing of "good cause,"[13] the defendants in *Carter* were in a much better position to make such a showing than those in the instant case.

If I were to adopt the government's position on the presumption of regularity, as a practical matter it would be generally impossible for any defendant to establish prior proof of wrongdoing. In fact the chief government prosecutor was asked twice of circumstances which would require, under the government's theory, any interrogatories to be answered, and this skillful prosecutor stated

13. The government has placed great stress on the facts which allegedly distinguish *Procter* and *Carter* from the instant case. The government has filed with this court the briefs and transcripts of hearings in *Carter*. Not only did the defendants there argue that the speed with which the government filed its civil complaint after the dismissal of the grand jury entitled them to have the interrogatories answered, but also that from the very beginning it was never its intention to bring a criminal action. Specifically, the defendants placed heavy emphasis on the fact that the government granted immunity from prosecution to all their important officials. Thus they contended that there would have been no officials to prosecute had a criminal action been brought. The defendants also argued that by the very nature of the patent licensing agreement which was involved in *Carter*, the case never had a "criminal cast", and that correspondence between the Justice Department and themselves confirmed this fact.

It may well be that Judge Dawson was influenced by these arguments, and that his decision gives the government some basis to argue that "good cause" must be shown before any interrogatories must be answered. However, with the exception of a brief reference to the "interesting chronology" none of the other materials presented by the defendants are to be found in his opinion. Considered in this light I am forced to reject these arguments as a total explanation of the rationale of the *Carter* decision. As I indicated in the text *Carter* and *Procter* (but particularly *Carter*) are not without ambiguity on the question of the necessity for "good cause" as mandatory to compel answers to interrogatories.

that he could not conjure up such a situation.[14]

On the other hand, if I were to adopt the defendants' position completely, as a practical matter it could be inordinately difficult for the government to simultaneously prepare for trial and still meet the full ambit of discovery which defendants might seek. In addition, when one analyzes the extraordinary scope of data requested by the defendants, it is apparent that their interrogatories extend to several unexplorable aspects of policy, data and decision making which should not be within the ambit of discovery.

Upon weighing these two polar consequences—one of no information and the other an almost wholesale delivery of government files—one must ask whether a reasonable balance can be struck wherein any abuse of the grand jury process can be ascertained, yet at the same time eliminating a wholesale inquiry into the government's operation of its grand jury proceeding.

I have concluded that a balance can be struck which will necessarily encumber the government to some extent by requiring it to answer some questions and at the same time prevent a microscopic inquiry into its decision making procedures.

B. *Scope of Inquiry and Documentation.*

As to the inquiry in issue, I could not imagine interrogatories more broad in scope than those submitted by the defendants. They ask for the following: the names of each person assigned to the investigation by the grand jury and each person whose duties involved in any way the supervision or review of such investigation; each attorney for the government authorized to be present, and separately, each person who was present at any time while the grand jury was in session; whether any representatives of the Antitrust Division of the Department of Justice ever recommended to such grand jury that an indictment be returned, including a full identification of such person;

and an identification of all documents related to the investigations. Defendants seek to discover "whether any recommendation was made or opinion expressed within the Department of Justice by *any* person * * * that the grand jury: (i) be requested to return an indictment or (ii) not be requested to return an indictment." The defendants also request that answers be given which "state * * * [the] *substance* of *any recommendation or opinion* expressed within the Department of Justice by *any person*" as to whether the grand jury should "(i) be requested to return an indictment; (ii) not be requested to return an indictment; or (iii) that a civil proceeding be instituted; and (b) if so, as to each such recommendation or opinion, separately: (i) state the date on which it was made or expressed; (ii) state whether it was made or expressed orally, or in writing, or both; (iii) state its substance; (iv) identify the person or persons making or expressing it; (v) identify each and every person to whom it was made or expressed and/or routed; (vi) identify each and every document constituting, containing, referring to, or in any way relating to it, regardless of whether it was made or expressed orally or in writing; (vii) state what action was taken with respect to it; (viii) state whether such action was communicated orally or embodied in a document or both; (ix) state the date on which such action was taken; (x) identify the person or persons taking such action; and (xi) identify each and every document constituting, containing, referring to, or in any way relating to, such action."

They request that plaintiff "state the date on which the decision was first made within the Department of Justice to commence the civil proceedings", to identify the person or persons by whom the decision was made, and *"any other persons participating in the making of that decision,* and identify each and every

---

14. Transcript of hearing—July 8, 1965 (pp. 12–14).

Transcript of hearing—Oct. 13, 1965 (pp. 16, 19, 20.)

document constituting, containing, referring to or in any way related to such decision." In addition, it requests information about the polling of the grand jury. By their very broadness, if these interrogatories were sanctioned, the government could be required to reveal all of the elements inherent in its decision making process as to the utilization of the grand jury. Furthermore, by its requests that the government state the "substance" of these memoranda and recommendations, the defendants are in effect requesting information which could almost be the equivalent of having the very documents in issue turned over to defendants.

█ There is merit in the government's contention that to allow the total disclosure of information sought by defendants would undermine the policy "of preserving maximum freedom of dissent at all levels of review." I assume that the Department of Justice is like most law departments, in that there is not always monolithic unanimity of opinion among its staff members, particularly at the investigatory stage. Thus there appears to be merit in the statements made in the affidavit of Lewis Bernstein:[15]

> Sometimes the several members of the staff do not agree whether to recommend an indictment, or a civil action only or both actions. Sometimes, for example, some members of the staff may believe that there is evidence beyond a reasonable doubt that the antitrust laws have been violated and that a criminal prosecution is warranted but have serious doubts that they will be able to persuade a petit jury of this. In such instances, they may believe it preferable not to ask for an indictment but to seek to enjoin their legal conduct by an injunction in a civil action instead. Their recommendations are again reviewed by the Section Chief, then by each of the two assistants to the Assistant Attorney General and finally by the Assistant Attorney General. In some cases the Assistant

Attorney General's decision is reviewed by the Attorney General.

At each stage of the review, attorneys are required to examine and point out the possible defenses and weaknesses in the case. Their memoranda analyze in detail their views of the evidence, their conclusion and their opinions. Their doubts are expressed and sharp differences of opinion may exist among the various staff members. These differences may not be resolved until after review by the Assistant Attorney General.

Similarly, the affidavit of Robert L. Wright, Esquire, who was the first assistant in the Antitrust Division from September 3, 1961 to the date of his affidavit —October 5, 1965—notes that at the time of the *Carter* case, the Antitrust Division concluded that "it would not permit any of its attorneys to state what the recommendations had been in connection with the prosecution of that case until and unless they were ordered by a court to do so. The basis for this decision was a belief that its attorneys would be reluctant to make recommendations against indictments if such recommendations might later be made available for the defense of a case." Mr. Wright further noted that the policy of the Department was "simply that of preserving maximum freedom of dissent at all levels of review. If the depositions of everyone participating in the Grand Jury investigation, or decision as to whether or not to seek an indictment or decision to file a civil action instead, or to take no action, are to be taken as a matter of course, those persons may be improperly influenced by a fear that frank and critical comments might affect the trial of the case." As was stated in Kaiser Aluminum and Chemical Corp. v. United States, 157 F.Supp. 939 (Ct. of Claims, 1958), at pages 945–946:

> Free and open comments on the advantages and disadvantages of a proposed course of governmental management would be adversely affected if the civil

---

15. Chief of the Special Litigation Section of the Antitrust Division.

servant or executive assistant were compelled by publicity to bear the blame for errors or bad judgment properly chargeable to the responsible individual with power to decide and act.

The defendants' interrogatories, as they now stand, would permit them to seek discovery of recommendations made by lesser officials in the Department of Justice; as to that, Judge Hartshorne's observations in *Procter,* supra, are instructive (174 F.Supp. at page 241):

> In order to ascertain the above "finding that the Grand Jury proceeding was used as a short cut to goals otherwise barred or more difficult to reach," or that it was not, the defendants have filed voluminous interrogatories directed to the officials of the Department of Justice from top to bottom. *Since the crucial determination, as to when the Department determined to proceed civilly only, was presumably made only at the highest levels, clearly all such interrogatories at the lower levels are presently unnecessary, harassing and improper.* It is only if discovery at these highest levels is fruitless, that discovery at lower levels may become appropriate. (174 F. Supp. 233.) (Emphasis added.)

Accordingly, any interrogatories which the government must answer, should be answered by officials on the highest level of authority on which the decisions were finally made. As an example, they should be answered by the Assistant Attorney General in charge of antitrust, or one of his principal assistants; There should be no need for wholesale disclosure of preliminary policy discussions within the department.

### III.

### INTERROGATORIES WHICH MUST BE ANSWERED AND DOCUMENTATION PROVIDED.

■ For the above reasons, it is my decision that the government should answer the following interrogatories, the answers to which are to be made available to the defendants and also placed on the record.

*Interrogatory No. 1:* When was the decision first made that a grand jury inquiry would be initiated to investigate possible violations of the antitrust laws by the defendants?

*Interrogatory No. 2:* When did the Department of Justice first decide that it would not seek an indictment against the defendants?

*Interrogatory No. 3:* When was the decision first made, by the Department of Justice to proceed with a civil suit against the defendants?

*Interrogatory No. 4:* When was the decision first made to proceed only by civil process against the defendants thus ending the possibility of concurrent prosecution and investigation of civil and criminal claims?

In addition to providing the defendants with answers to the above interrogatories the government is directed to supply some supporting documentation. These documents will be reviewed by this Court *in camera* in order that a determination may be made that the documents support the answers given by the government to the interrogatories. This proposed review of documents is not intended to be a probe of governmental policy in antitrust cases—hence the limiting of the documents to those decisions made on the highest level of authority (as the highest level of authority has been previously defined). I have decided to review the tendered documents *in camera* because it is possible that they may contain information which is not relevant to the inquiry here, or information of a privileged nature which should not be disclosed to the defendants. This procedure was approved and followed in United States v. Certain Parcels of Land, Etc., et al., 15 F.R.D. 224 (S.D.California, Central Division, 1953).

My colleague, Chief Judge Clary, was confronted with a somewhat related problem in City of Philadelphia v. Westinghouse Electric Corp., 210 F.Supp. 486, (E.D.Pa., 1962). There he was asked

for the production of the transcript of the testimony of a witness who had appeared before a grand jury. Chief Judge Clary noted that Judge Kirkpatrick had previously observed:

> The court is called upon to balance two policies, the one requiring secrecy, the other disclosure. In re Grand Jury Proceedings [4 F.Supp. 283] supra, at 285 (E.D.Pa., 1933), 210 F.Supp. 486 at p. 489.

Chief Judge Clary held that:

> If, at the completion of any deposition taken in the national program, a motion is made for the production of that witness' Grand Jury testimony, and if the deposition judge requests it from this Court for examination in camera, the testimony will be immediately made available to him. The deposition Judge may then contrast the Grand Jury testimony with the deposition and determine, in his own discretion, whether in the *interest of justice* there is compelling need for disclosure. (210 F. Supp. 486 at 491.) (Emphasis added.)

 I recognize that unlike the *City of Philadelphia,* supra, the instant matter is one step before a request for grand jury testimony. I am, nevertheless, permitting an in camera examination so that in the "interest of justice" a balance can be struck between (1) the need of the defendants to ascertain whether there has been an abuse of the grand jury process, and (2) the policies of grand jury secrecy and freedom in governmental policy making. If in my view the documentation substantiates the

answers given, the documents will not be turned over to the defendants and this phase of the proceedings will be at an end.

The denial to the defendants of data which may impinge on grand jury secrecy and the doctrine of separation of powers, does not deny them the full panorama of "other discovery techniques at [their] disposal" so that they may properly defend their case at trial. Cf. United States v. General Motors, 15 F.R.D. 486, at 488 (D.Delaware, 1954). Accordingly, I have scheduled argument on the defendants' other interrogatories which are designed to obtain information other than that requested here. The full latitude of discovery will be available to all the parties so that they will not be further delayed on other phases of this case while the government is complying with, or contesting, the order attached to this opinion.[16]

### ORDER

And now, this 3rd day of February, 1966, in accordance with an opinion filed at the same time, the plaintiff is directed to answer within twenty (20) days the following interrogatories:

*Interrogatory No. 1:* When was the decision first made that a grand jury inquiry would be initiated to investigate possible violations of the antitrust laws by the defendants?

*Interrogatory No. 2:* When did the Department of Justice first decide that it would not seek an indictment against the defendants?

16. I have reviewed the other objections raised by the government claiming executive privilege, work product privilege, and attorney client privilege. By reason of the limited interrogatories and documentation required by the attached order, I find that these defenses are not a bar to the order in issue.

It is of course evident that the defendants have not specifically requested the production of documents, and in my order there is a requirement of the delivery of documentation to this Court in camera. Accordingly, from a superficial view one might gather that this order imposes a burden on the government greater than was originally requested by defendants. However, as noted in the text of this opinion at pages 14 and 15, the defendants request statements as to the substance of various government documents and recommendations; thus, the actual scope of the plaintiff's interrogatories is so broad that the delivery to me of the documents in camera is in effect less than what would have been required of the government if it had been ordered to state on the public record the substance of said documents.

*Interrogatory No. 3:* When was the decision first made by the Department of Justice to proceed with a civil suit against the defendants?

*Interrogatory No. 4:* When was the decision first made to proceed *only* by civil process against the defendants thus ending the possibility of concurrent prosecution and investigation of civil and criminal claims?

Further, plaintiff is directed to file documentation in camera in support of any answers to the above interrogatories; this documentation will be reviewed by the court alone and will consist of memoranda or recommendations made on the highest level of authority as defined in the attached opinion.