**UNITED STATES of America,**
**Plaintiff,**

v.

**PROCTER & GAMBLE COMPANY et al.,**
**Defendants.**

**Civ. A. No. 1196–52.**

United States District Court
D. New Jersey.
May 27, 1960.

See also D.C. 25 F.R.D. 252.

Margaret H. Brass, Antitrust Division, Dept. of Justice, Washington, D. C., Chester A. Weidenburner, U. S. Atty., by Charles H. Hoens, Jr., Asst. U. S. Atty., Newark, N. J., for plaintiff.

Cahill, Gordon, Reindel & Ohl, by Mathias Correa, New York City (O'Mara, Schumann, Davis & Lynch, Jersey City, N. J., Jerome Doyle, James B. Henry, Jr., Immanuel Kohn, New York City, of counsel), for Colgate-Palmolive Company.

Arnold, Fortas & Porter, by Abe Fortas, and William McGovern, Washington, D. C., Bailey & Schenck, Newark, N. J., for Lever Brothers Co.

Royall, Koegel, Harris & Caskey, by Kenneth C. Royall, New York City, Dinsmore, Shohl, Dinsmore & Todd, by Richard W. Barrett, Cincinnati, Ohio, Taft, Stettinius & Hollister, by Charles Sawyer, Cincinnati, Ohio, Toner, Crowley, Woelper & Vanderbilt, Newark N. J., for Procter & Gamble Co.

Davies, Richberg, Tydings, Landa & Duff, by Shelby Fitze, Washington, D. C., McCarter & English, Newark, N. J., for Association of American Soap & Glycerine Producers, Inc.

HARTSHORNE, District Judge.

The issue here is whether the United States Government has a privilege as to its own documents, which will justify its refusal to produce such documents to the defendants,[1] in order to prove a point made crucial for defendants as "the law of the case" by the decision of the United States Supreme Court herein, United States v. Procter & Gamble Co., 1957, 356 U.S. 677, 683, 78 S.Ct. 983, 2 L.Ed.2d 1077.

---

1. Defendant Procter & Gamble, while not a party to the Rule 34 motion, appeared at the argument on privilege because of its interest therein.

In its opinion our highest Court there said, alluding to defendants' claim that the Government was using the criminal procedure of a Grand Jury for civil purposes only,

> "If the prosecution were using that device, it would be flouting the policy of the law * * * It is only when the criminal procedure is [thus] subverted that 'good cause' for wholesale discovery and production of a grand jury transcript would be warranted. No such showing was made here." (Bracketed word this Court's).

For some time after such opinion was rendered, defendants have been seeking to make "such showing", by serving plaintiff Government with interrogatories, by taking depositions of those in the upper echelon of the Department of Justice at the time, including two former Attorneys General of the United States, and finally by demanding the production of documents material to the above issue under F.R.Civ.P. 34, 28 U.S.C. Because of the above, this Court, on April 18, 1960, ordered plaintiff Government to produce from the files of the Department of Justice the documents passing through the hands of the upper echelon of such Department during the time in question, which either (1) contained "a specific decision of the plaintiff not to seek an indictment herein but to pursue a civil remedy only", (2) stated a policy of the Department as to antitrust cases where "civil complaints only would be used * * * and that such policy was applied to this case", or (3) concern or have a direct bearing on that Department's intention to proceed civilly only in this case.[2] While at that time the Government had not formally claimed to be privileged from producing such documents, this constituting the requisite formal basis therefor, United States v. Reynolds, 1952, 345 U.S. 1, 7, 73 S.Ct. 528, 97 L.Ed. 727, it had indicated that it was considering doing so, so that the above order further provided that, if it did so, this Court would thereupon "hold a hearing as to such claim of privilege." Such a formal claim of privilege was thereafter filed.

Counsel are in dispute as to whether or not it was understood that the normal rule applicable to the production of documents under an F.R.C.P. 34 order applies in this case, that being that the documents produced thereunder are ad-

2. The order in question states: "It is now, on this 18 day of April, 1960, Ordered that plaintiff produce for inspection and copying by defendants Colgate-Palmolive Company, Lever Brothers Company, and The Association of American Soap and Glycerine Producers, Inc., from the files of the Department of Justice, all documents which were: (a) Prepared by, sent by, received by or which indicate that copies were received by or which bear initials by any Attorney General, Deputy Attorney General, Acting Attorney General, Assistant Attorney General or Acting Assistant Attorney General in charge of the Antitrust Division, and which were (b) written or received during the period January 1, 1950 through December 31, 1952, and which are of the following kinds: (1) documents containing a specific decision of the plaintiff not to seek an indictment herein but to pursue a civil remedy only, (2) documents which, separately or together, state a then existing policy of the Department of Justice as to the kinds of antitrust cases in which indictments would not be sought but civil complaints only would be used, and which show that the facts of this case fall within such policy, and that such policy was applied to this case, or which (3) concern or have any direct bearing on the intention of the Department of Justice to proceed civilly only in this case. It is further Ordered that in complying with this order the plaintiff will be required to search only those files of the Department of Justice which concern this case or which concern general antitrust policies. And it is further Ordered that as to any documents which would be required to be produced by this order plaintiff, on or before April 25, 1960, shall determine if it will claim an executive privilege thereon, and, if so, shall file such claim of privilege accordingly, this Court thereupon to hold a hearing as to such claim of privilege."

mittedly the class of documents ordered to be produced thereby. This question, however, is in fact quite immaterial. The real question is whether the documents are or are not privileged, this question of privilege depending primarily upon the question of whether the documents directly bear on the above crucial issue in the case, i. e., are material thereto.

The issue before this Court is thus whether an executive privilege exists of the nature claimed, and then as to its extent. The claim of privilege, as filed, recites that it "is based upon the constitutional doctrine of the separation of powers as among the executive, the judicial and the legislative branches of the Government" and that "the executive files and materials relating to investigations of possible violations of law are confidential and privileged and that disclosure is not in the public interest * * * This branch of the executive arm of the Government must be free to engage in full discussion and deliberation in order to form a proper judgment of the course to be pursued in the prosecution of litigation * * * The Attorney General, as head of the Department of Justice, and his aides, are entitled to the views and recommendations of their subordinates and to the full expression of those views * * * " Note that the executive privilege relied on is not a matter of national security because of its military nature, as in *Reynolds*, supra, and the Government asserted at the hearing that it did not rely upon the "housekeeping" statute, as amended in 1958, under which original statute governmental privilege had previously been frequently claimed, R.S. § 161 (5 U.S.C.A. § 22), as amended by P.L. 85–619, Aug. 12, 1958, 85th Cong. This is doubtless because of the restrictive provisions of the 1958 amendment that it does not "authorize withholding information from the public or limiting the availability of records to the public."

Specifically, the present question is whether, and, if so, to what extent, an executive privilege exists "to engage in full discussion and deliberation" with subordinates as well as Department heads without disclosing same, "in order to form a proper judgment" as that judgment affects not only the Government's rights but those of opposing parties in the course of litigation. Despite the constitutional question as to the actual physical control of the courts over the executive branch of the Government, due to the separation of Federal powers, there is no doubt that the validity of this claim of privilege must be adjudicated by this Court with all its consequences, since the Court has jurisdiction over the Government as a party to the case before it, as well as control over the evidence in that case.

"The court itself must determine whether the circumstances are appropriate for the claim of privilege * * * Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *Reynolds*, supra, 345 U.S. at pages 8, 9, 73 S.Ct. at page 532.

It is true that the Government, operating as it does through a hierarchy of agents, must have the benefit of their full, free advices, and since those advices might well cover angles of a case which would hamper the Government's action if publicized, normally these advices should not be turned over to those with interests hostile to that of the Government. To that extent, and in the absence of circumstances which would prevent that claim of privilege from being "appropriate", the present claim of privilege would seem valid. In Kaiser Aluminum & Chemical Corp. v. United States, Ct.Cl.1958, 157 F.Supp. 939, 940, the Court upheld the Government's similar claim of privilege as to a mere "advisory opinion on intra-office policy" from a subordinate, when that opinion did not evidence an operative decision.

The existence of this inherent executive privilege has long been recognized. In the trial of Aaron Burr, (United States v. Burr), C.C.D.Va.1907, 25 Fed. Cas. page 187, No. 14,694, Chief Justice Marshall indicated that the President has the right to withhold documents, or portions thereof, where disclosure would be harmful to the public interest. In the historic case of Marbury v. Madison, 1803, 1 Cranch 137, at pages 169 and 170, 2 L.Ed. 60, there is an allusion to the rights of the executive as being independent of the judicial and legislative branches by virtue of the constitutional separation of powers. Various attorneys general have written opinions supporting the proposition that an executive privilege of the nature here claimed exists. See 15 Op.Atty.Gen. 378 (Devens 1877); 40 Op.Atty.Gen. 45 (Jackson 1941). Wigmore also recognizes the existence of this governmental privilege, 8 Wigmore, ¶2378, 3rd ed. Plaintiff also refers to Canadian and British authorities. These authorities undoubtedly adhere to the view that the Crown should not be required generally to disclose documents in its possession. However, in view of the different form of government in this country in its separation of powers and even broader protection of the rights of the individual, these authorities do not aid this Court. The *Kaiser* case, supra, is an expression of this development of the executive privilege in this country and appears soundly based.

■ With this in mind, the next consideration is the nature of the documents upon which the privilege is claimed, to determine just how encompassing this inherent executive privilege really is. To the extent that these documents do not show mere discussion of reasons or advices from subordinates, but do have a direct bearing on a decision of the Department of Justice, pro or con, to use the Grand Jury for a solely civil purpose, the Supreme Court itself has made such evidence crucial to the rights of the parties, and it is not "appropriate" for the Government's claim of privilege to overcome the disclosure of such crucial evidence.

The situation here is somewhat analagous to the lawyer-client privilege, which must always be construed according to the circumstances of the case. Ordinarily this privilege applies so that a client and his lawyer, without disclosure to third parties, may freely consult, discuss and deliberate as to the client's rights and the appropriate lawful procedure to maintain such rights. However, the minute the lawyer and his client discuss, not the lawful protection of the rights of the client, but acts which transcend the law and project a violation of the law, the privilege at once ceases, and any decision in that regard, together with the substance of what is said and done in that regard, falls without the privilege and is subject to disclosure, Clark v. United States, 1933, 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993; In re Selser, 1954, 15 N.J. 393, 105 A.2d 395.

■■ So here, if there has been a subversion by the use of Grand Jury procedure for civil purposes only, as condemned by our highest Court, not only the decision to do so, but also evidence material to that decision, are not the subject of the privilege, but are subject to disclosure. It also follows that evidence material to showing that no such violation of law occurred is also material to counteract possible proof to the contrary. To the above extent, the normal executive privilege of the Government to keep secret its full, free advices and discussion with its agents and attorneys is delimited, where the "circumstances are appropriate". That does not mean that the mere discussion by such agents of the reason why civil antitrust proceedings are necessary is outside the privilege and to be given in evidence. That is because such civil proceedings are lawful and may be lawfully considered, if at the same time the Department of Justice has in mind pursuing criminal proceedings concurrently. It is only when

plaintiff Government's decision or intent is shown to pursue a civil remedy alone, that the Government's use of the Grand Jury for that purpose becomes unlawful. It is therefore only evidence pro and con that particular decision and intent that is admissible. But if such evidence exists, it and it alone should be produced, despite the fact that it may be intermingled in a communication which otherwise might fall within the normal executive privilege as to discussions and deliberations of governmental agents and attorneys. The evidence in that regard must therefore be produced. Such subversion might be shown, for instance, by a decision of the Attorney General to use the Grand Jury for a solely civil purpose. It might be shown by the intent of the subordinates in actual charge of the Grand Jury to do this, if that intent was not countermanded by higher authority, plus the lack of such countermand. It might be shown by an established policy of the Department of Justice to follow this course as to a certain category of antitrust cases, and the recognition by the Department that the present case fell within that category and the policy was applied to this case.

 Since the executive privilege here alluded to is one largely dealing with the work of attorneys for the Government, its similarity to the work product rule laid down in Hickman v. Taylor, 1947, 329 U.S. 495, 67 S.Ct. 385, 91 L. Ed. 451 should also be noted. Normally this work product of an attorney is privileged from disclosure. But *Hickman* makes it abundantly clear that this work product principle is not watertight, but must yield, under appropriate circumstances, to the necessities of the case and, of course, to "the law of the case." Certainly the law of this case, laid down by the Supreme Court to protect the rights of the parties, constitutes good cause for limiting this privilege, so similar to the work product privilege, of the Government attorneys to the necessary extent above alluded to. Because for the above

reasons a portion of some documents may go to the defendants while another portion may not, the Court may have to excise some of such parts from the others. This procedure is correct, United States v. Certain Parcels of Land, etc., D.C.S.D. Cal.1954, 15 F.R.D. 224; *United States v. Burr,* supra. Furthermore, as to any documents, or portions thereof, excluded because of privilege, the privileged portions must be excised before the defendants see them, else the Court will have locked the barn door after the horse is stolen. As *Reynolds* says,

"The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect." 345 U.S. at page 8, 73 S. Ct. at page 532.

 Finally, defendants argue that on the theory of waiver they must be given each of the documents produced by plaintiff Government under the above mentioned order, and in toto. Bearing in mind the Hornbook principle that waiver is the "voluntary relinquishment of a known right", the question thus is whether the Department of Justice has voluntarily relinquished its right to claim privilege, as above set forth, to documents, or any parts thereof, which do not evidence the decision of the Department of Justice to use the Grand Jury solely for civil purposes.

 True, plaintiff, by instituting this litigation in the courts, subjects itself to the determination by the courts of what it must lawfully do. True, the question as to its possible subversion of the Grand Jury process requires plaintiff to produce all its evidence material to that issue. This is called for by this opinion, and the Court hereafter will shortly apply that rule to these documents themselves. But the plaintiff has never voluntarily relinquished its known right not to produce documents or the portions of same which do not bear directly on the above issue. Plaintiff must

produce as not privileged all documents so far as they directly bear upon the above crucial issue, even though, were such crucial issue absent, the Government's privilege might be broader. On the other hand, plaintiff, claiming privilege to all these documents and having made such claim only after the entry of the above mentioned order and in connection with the production of the documents, has obviously not waived such claim as to any portions of same. Defendants will receive such documents, or portions thereof, not because of any waiver by plaintiff Government, but because, in that aspect, the privilege does not cover the portions of documents which directly bear on the same crucial issue. Furthermore, at no time has the Government made available documents other than the one excised portion showing the alleged decision date of the Attorney General. It has not furnished further advices and reasons of subordinates concerning the conduct of the case. See the analagous cases of United States v. Deere & Co., D.C.1949, 9 F.R.D. 523; Mitchell v. Roma, 3 Cir., 1959, 265 F.2d 633.

Defendants' objection to this Court's alone passing on these documents claimed to be privileged is insubstantial. That is the only way their privileged nature can be determined. Obviously, defendants cannot see these allegedly privileged documents, before it is determined whether they are privileged. Defendants' citations of Jencks v. United States, 1957, 353 U.S. 657, 669, 77 S.Ct. 1007, 1 L.Ed.2d 1103, and Universal Oil Products Co. v. Root Refining Co., 1946, 328 U.S. 575, 580, 66 S.Ct. 1176, 90 L.Ed. 1447 are not helpful, since they both deal with altogether different situations from the present. Having determined that such a privilege exists, but that it is not all encompassing, this Court must examine the documents in question to determine those which come within the privilege and those which fall outside of the privilege.