**Fred B. BLACK, Jr., Plaintiff,**

v.

**SHERATON CORPORATION OF AMER-ICA et al., Defendants.**

**Civ. A. No. 440–67.**

United States District Court, District of Columbia.

April 27, 1970.

---

Gerald S. Rourke, Welch & Morgan, Washington, D. C., for plaintiff.

Peter R. Sherman, Smollar, Kuder & Sherman, Robert E. Anderson, Collins, Anderson, Ahern, Quinn & Wyland, Washington, D. C., for defendants Sheraton Corp. of America and Washington Sheraton Corp.

Neil R. Peterson, Dept. of Justice, Washington, D. C., for the United States.

## MEMORANDUM

SIRICA, District Judge.

This case is again before this Court on a motion by the plaintiff to compel answers to questions propounded during the course of the deposition of Edward Pennypacker, an agent of the Federal Bureau of Investigation.[1] The subject matter of this litigation is the electronic surveillance by the United States of a suite of rooms occupied by the plaintiff in the Sheraton Carlton Hotel in Washington, D. C. Mr. Pennypacker was the FBI agent who supervised the surveillance. On the advice of counsel for the United States, he refused to answer certain questions propounded to him by plaintiff's counsel during the taking of his deposition on January 15, 1970, pursuant to the Federal Rule of Civil Procedure 26.

The questions which Mr. Pennypacker refused to answer sought information regarding the extent of the government's investigation of the plaintiff at the time of the commencement of the electronic surveillance of his Sheraton Carlton suite, and information about the leads that were developed by the FBI as a result of the surveillance. The plaintiff has narrowed his inquiry to four specific areas in which he claims that the government's use of the information obtained as a result of

---

1. Plaintiff's previous motion to compel answers was denied by this Court on the ground that the information sought was protected by the informer's privilege. Black v. Sheraton Corporation of America, 47 F.R.D. 263 (D.D.C.1969).

the electronic surveillance damaged him.[2] These are: (1) the indictment of the plaintiff for income tax evasion; (2) the Serv-U case, in which plaintiff was named as one of the defendants; (3) the hearings of the Senate Rules Committee into the affairs of Robert G. Baker, before which plaintiff was called to testify; and (4) the alleged attempt by federal agents to use the pending income tax indictment to blackmail the plaintiff into cooperating with their investigation of Las Vegas gambling activities.

As background for the present motion, the Court notes that the United States has previously made available to the plaintiff copies of all documents in the FBI files which contain information received from the surveillance. These include: (1) all logs of the surveillance, which are the actual handwritten notes of the agents who monitored the bugging device; (2) all summary airtels prepared from the logs, which are typewritten summaries of the information in the logs; (3) copies of all portions of reports which contain information obtained from the surveillance; and (4) two memoranda from the Director of the FBI to the Attorney General advising the latter of the information which had been obtained from the surveillance.

 The question before the Court on this motion is whether the plaintiff has the right to information regarding the investigation of his affairs which may be in the FBI files, above and beyond that which has already been made available to him. It is undisputed that the government is subject to the rules of discovery in a civil suit just as is any private party.[3] Nor is there any question that the scope of examination in the taking of a deposition is broad. Federal Rule of Civil Procedure 26(b) limits the scope of examination only to that which is "relevant," and our court of appeals has defined relevance in this context "in terms of the likelihood that useful evidence may be uncovered." [4] Rule 26(b) expressly limits the scope of discovery to those matters which are "not privileged." The United States has the right to object on the grounds of privilege when the disclosure of secret information would be contrary to public policy or the public interest. United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953). This Court has held that the investigative files of the FBI fall within this government privilege to protect the public interest. City of Burlington, Vermont v. Westinghouse Electric Corp., 246 F.Supp. 839 (D.D.C.1965). In that case while upholding the government's claim of informer's privilege, this Court stated that:

> the public interest in encouraging cooperation with the Federal Bureau of Investigation and in protecting the results of their investigations from scrutiny, outweighs the defendants' interest in their production.[5]

The public policy in favor of maintaining the secrecy of FBI investigative reports has been recognized by Congress. In passing the Freedom of Information Act,[6] which greatly expanded the information which government agencies must make available to the public, Congress explicitly exempted from its coverage:

> investigatory files compiled for law enforcement purposes except to the ex-

2. In his amended complaint, filed February 24, 1970, plaintiff has narrowed his allegation of damages to these four areas.

3. United States v. Proctor & Gamble Co., 356 U.S. 677, 681, 78 S.Ct. 983, 2 L.Ed. 2d 1077 (1958). See generally 4 Moore, Federal Practice ¶ 26.25 (2d ed. 1969).

4. Freeman v. Seligson, 132 U.S.App.D.C. 56, 65, 405 F.2d 1326, 1335 (1968);

see Societe Internationale, Etc. v. Brownell, 96 U.S.App.D.C. 232, 241, 225 F.2d 532, 541 (1955) rev'd on other grounds, 350 U.S. 937, 76 S.Ct. 302, 100 L.Ed. 818 (1958); United States v. Maryland & Virginia Milk Producers Association, 22 F.R.D. 300 (D.D.C.1958).

5. 246 F.Supp. at 846–847.

6. 81 Stat. 54 (1967), 5 U.S.C. § 552 (Supp. IV 1969).

tent available by law to a party other than the agency.[7]

Although they are criminal cases, two recent Supreme Court decisions are relevant to this dispute. In Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), the Court held that all records of an illegal surveillance must be turned over to the defendant prior to any determination by the trial court as to whether the evidence introduced at trial was tainted by the illegally obtained evidence. But the Court was careful to point out:

> that disclosure will be limited to the transcripts of a defendant's own conversations and those which took place on his premises. * * *

> None of this means that any defendant will have an unlimited license to rummage in the files of the Department of Justice. Armed with the specified records of overheard conversations and with the right to cross-examine the appropriate officials in regard to the connection between those records and the case made against him a defendant may need or be entitled to nothing else. Whether this is the case or not must be left to the informed discretion, good sense, and fairness of the trial judge.[8]

This position was reiterated by the Court in Taglianetti v. United States, 394 U.S. 316, 317, 89 S.Ct. 1099, 1101, 22 L.Ed.2d 302 (1969):

> Here the defendant was entitled to see the transcript of his own conversations and nothing else. He had no right to rummage in government files.

While these cases are not binding in that the scope of discovery in criminal cases is not as broad as in civil cases, they do show the concern of the Supreme Court for the secrecy and sanctity of the FBI investigative files.

■ It is thus apparent that the information sought by the plaintiff comes within the government's right to protect information which, if released, might be harmful to the public interest. The results of investigations of alleged criminal activity are by their nature the type of information that the public interest requires be kept secret. Given this finding that the public interest favors the continued secrecy of the information in the FBI files, the Court, in the exercise of its discretion on a motion to compel answers, may consider whether the information is necessary for the proof of the plaintiff's case. See United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953). The Court there in discussing executive privilege as it relates to military secrets stated:

> In each case, the showing of necessity which is made [by the party seeking discovery from the government] will determine how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate. * * * Here, necessity was greatly minimized by an available alternative, which might have given respondents the evidence to make out their case without forcing a showdown on the claim of privilege. By their failure to pursue that alternative, respondents have posed the privilege question for decision with the formal claim of privilege as set against a dubious showing of necessity.[9]

In the instant case the plaintiff has all of the information obtained directly from the surveillance complained of. In balancing the public interest in maintaining the secrecy of the information against the plaintiff's showing of the necessity of its disclosure, the Court finds that an insufficient showing of necessity has been made. The United States has indicated its willingness to allow the plaintiff to

---

7. 5 U.S.C. § 552(b) (7) (Supp. IV 1969).

8. 394 U.S. at 184–185, 89 S.Ct. at 972, 973.

9. 345 U.S. at 11, 73 S.Ct. at 533, 534.

depose any of its agents with respect to whether they were furnished with information from the electronic surveillance. In this way the plaintiff can attempt to trace the dissemination of the information, if any, without the necessity of allowing him access to the FBI files. No necessity has been established for disclosing to the plaintiff the exact nature of the information which may have been obtained by the FBI from leads developed from the surveillance or prior to the surveillance.[10]

For the foregoing reasons the Court believes that the United States should not be required to disclose the information sought by the plaintiff. The plaintiff's motion to compel answers is therefore denied.

See also D.C., 295 F.Supp. 943; D.C., 310 F.Supp. 327.

10. The plaintiff attempted to obtain the information which he seeks here on the remand of his criminal conviction. In denying the request, Judge Jones rejected the argument that the only way to determine what use was made of the information from the surveillance was through a search of the FBI central files. See United States v. Black, 282 F.Supp. 35 (D.D.C.1968) (Transcript of Hearing on Defendant's Motion for Discovery, p. 537, December 14, 1967).