**Fred B. BLACK, Jr., Plaintiff,**

v.

**SHERATON CORPORATION OF AMERICA et al., Defendants.**

**Civ. A. No. 440–67.**

United States District Court, District of Columbia.

Jan. 21, 1974.

Gerald S. Rourke, Welch & Morgan, Washington, D. C., for plaintiff.

Neil R. Peterson, Dept. of Justice, Washington, D. C., for defendant United States.

CHARLES R. RICHEY, District Judge.

The question of production of FBI documents is again before the Court in this case in three of the Plaintiff's Motions. The motions are as follows: (1)

Motion for a Protective Order, filed August 31, 1973, to stay the Defendant United States' discovery until it complies with the Court's Order of July 10, 1973; (2) Motion to Compel Discovery of Federal Bureau of Investigation files relating to the beginning of the FBI's investigation of the Plaintiff, including the authorization of the investigation and the January 28, 1963 report of Agent Pennypacker; and (3) A Motion to Compel Sanctions against the Defendant United States for its failure to comply with the Court's July 10th Order. Having considered the briefs on both sides regarding each of these motions, as well as counsels' arguments and the record in this case, the Court grants the Plaintiff's Motions To Compel and To Impose Sanctions for the reasons discussed below.

## I. BACKGROUND

This suit pertains to the admitted electronic surveillance of the Plaintiff's suite in the Sheraton Carlton Hotel in Washington, D. C. by FBI agents between February 7, 1963 to April 25, 1963. The discovery of certain FBI files has been the central controversy in this case since its inception seven years ago. The Court has considered two previous motions to compel. The first, a motion to compel answers to interrogatories and compel production was denied on the ground that the information sought was protected by the Informer's Privilege. 47 F.R.D. 263 (D.D.C.1969) (Sirica, C. J.). The second motion sought to compel answers regarding the extent of the government's investigation of the Plaintiff at the time of the electronic surveillance, and also sought information concerning the "leads" the FBI developed as a result of the surveillance. The Court denied this motion on the grounds that the Plaintiff's showing of his need for the information did not outweigh the public's interest in preventing disclosure. 50 F.R.D. 130 (D.D.C.1970) (Sirica, C. J.).

On July 10, 1973, this Court ordered the United States to allow the Plaintiff to inspect and copy: (1) all documents containing leads obtained from the eavesdropping, including the FBI reports of April 17, 1963 and July 12, 1963; (2) all communications in response to the eavesdropping material, including any airtels the Washington, D. C. office of the FBI received in response to the airtels it sent out requesting information concerning the Plaintiff; and (3) all documents relating to the leaving in place of the microphone after April 25, 1963 and any subsequent activation of the microphone. As of this date the United States has refused to comply with this order. It has refused to do so based on its claim of executive privilege which was made in an affidavit by the then Attorney General Elliot Richardson and filed October 19, 1973. The affidavit claims executive privilege as to the remainder of the file—that which had not previously been disclosed.

The Court has granted the Plaintiff's Motion for Partial Summary Judgment on the issue of liability, since the United States has admitted that it conducted the surveillance and disseminated the information obtained as a result of the surveillance. The sole issue remaining is the question of damages. The Plaintiff maintains that the documents he seeks are necessary to substantiate his claim for damages caused by the dissemination of the surveillance information and its fruits. Earlier, the Court felt the information the Plaintiff needed could be obtained without disclosure of the documents. The Court, therefore, found that the Plaintiff's need did not outweigh possible public interest in maintaining the confidentiality of the files. However, the suggested alternative—deposing the FBI agents involved in the surveillance regarding dissemination of the information—has proved to be an inadequate method of obtaining the necessary evidence.

II. THE COURT CAN NOT RECOG-
NIZE THE DEFENDANT'S
CLAIM OF EXECUTIVE PRIVI-
LEGE: (1) IT HAS BEEN IM-
PROPERLY CLAIMED; (2) IT
WOULD SANCTION OFFICIAL
MISCONDUCT AND PERVER-
SION OF POWER.

In considering the question of executive privilege, the Court must resolve three questions: (1) Is there a recognized claim of executive privilege; (2) Is the claim properly invoked; and (3) Is the claim applicable under the circumstances of this case.

■ The Attorney General's affidavit does not state the basis on which he rests his claim of executive privilege. The claim can be founded upon the constitutional basis of separation of powers or upon a statutory provision, i. e. the Housekeeping Act, 5 U.S.C. § 301, or the Freedom of Information Act exemptions, 5 U.S.C. § 552(b).[1] The Court assumes the claim rests upon the broader constitutional basis.

■ Without digressing into a lengthy analysis of the scope of the privilege, suffice it to say that the privilege is a discretionary one based upon the constitutional doctrine of separation of powers among the executive, judicial and legislative branches of the Government. It exempts the executive from disclosure requirements applicable to the ordinary citizen or organization, where such exemption is necessary to the discharge of highly important executive responsibilities involved in maintaining governmental operations. Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena, 40 F.R.D. 318 (D.D.C.1966). The privilege applies not only to the obvious—military and diplomatic secrets—but also includes documents integral to an appropriate exercise of the executive's domestic decisional and policy making functions—those documents reflecting the frank expression necessary in intra-governmental ad-

visory and deliberative communications. United States v. Article of Drug, etc., 43 F.R.D. 181, 190 (D.Del.1967); Carl Zeiss, supra; Rosee v. Board of Trade of City of Chicago, 36 F.R.D. 684, 689 (N.D.Ill.1965); United States v. Procter & Gamble Company, 25 F.R.D. 485, 489 (D.N.J.1960); See United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); Republic of China v. National Union Fire Insurance Co., 142 F. Supp. 551 (D.Md.1956); United States v. Burr, 25 Fed.Cas. p. 30, No. 14,692d (C.C.D.Va.1807).

■ However, the claim of executive privilege is not absolute. E. g., Nixon v. Sirica (United States v. Sirica) (In Re Grand Jury Proceedings), D.C.Cir., 487 F.2d 700 (decided October 12, 1973). The Court must determine whether the circumstances are appropriate for the claim of privilege. E. g., Reynolds, supra; Nixon, supra. Recognition of the claim requires a delicate balancing of competing interests: the public's interest in preserving confidentiality to promote open communication necessary for an orderly functioning of the government, and the individual's need for disclosure of particular information. The question at the core of any claim of executive privilege is whether the damage resulting from disclosure outweighs the need for a just resolution of a legal dispute.

In the course of its consideration of the claim, the Court has given the requisite thoughtful regard to the Attorney General's affidavit describing the documents and stating the reasons for maintaining confidentiality. Carl Zeiss, supra, 40 F.R.D. at 327, and cases cited therein. This Court is reluctant to act in any manner which could appear inconsistent with the Court's recognition of the affiant's widely acknowledged personal integrity. Furthermore, the Court is reluctant to employ its power to force an executive officer to disclose

---

1. Both statutory bases for the claim of executive privilege are extremely narrow in scope. Section 301 of Title 5 specifically states that the section does not authorize withholding information from the public.

reasoning or other considerations which underlie a decision (s)he was fully authorized to make. However, in the instant case, the Court is faced with two flaws in the claim. First, the claim was not asserted in the proper manner. Second, the claim seeks to shelter improper, unauthorized acts from disclosure.

### A. The Claim Was Improperly Asserted

The Attorney General's affidavit claims the privilege as to all of the FBI file which has not been disclosed. The file is approximately 6,000 pages long. The affidavit subdivides all the documents in the file into eight general categories. It then discusses in very general terms the reasons for preserving the confidentiality of each category of documents as a whole. The reasons for nondisclosure include "informer's privilege", inter-office memoranda, investigatory file, or irrelevancy to the case. There is no specific mention of the documents the Court ordered to be produced, nor is there any hint as to which category of documents the Attorney General believes they belong.

██ A formal and proper claim of executive privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality. United States v. Article of Drug, *supra*, 43 F.R.D. at 190; *see Carl Zeiss, supra*; *cf.*, Ash Grove Cement Company v. FTC (Civil Action No. 1298–71, Memorandum Opinion of October 24, 1973) (in this suit the FTC filed very detailed summaries of *each* document sought to be protected.) Without this specificity, it is impossible for a court to analyze the claim short of disclosure of the very thing sought to be protected. *See Reynolds, supra*. As the affidavit now stands, the Court has little more than its *sua sponte* speculation with which to weigh the applicability of the claim. An improperly asserted claim of privilege is no claim of privilege. *See* O'Neill v. United States, 79 F.Supp. 827, 830 (E.D.Pa., 1948), vacated on other grounds sub nom. Alltmont v. United States, 174 F.2d 931 (3rd Cir. 1949), cert. denied, 339 U.S. 967, 70 S. Ct. 999, 94 L.Ed. 1375 (1950). *See* generally Wright & Miller, Federal Practice and Procedure, Civil § 2019 (1970); Bishop, The Executive's Right to Privacy, 66 Yale L.J. 476 (1957). Therefore, despite the fact that a claim was made by the proper executive as *Reynolds* requires, the Court can not recognize the claim in the instant case because it is legally insufficient to allow the Court to make a just and reasonable determination as to its applicability. To recognize such a broad claim in which the Defendant has given no precise or compelling reasons to shield these documents from outside scrutiny, would make a farce of the whole procedure.

### B. The Claim Seeks to Shelter Improper Official Acts

██ In weighing the public interest factors in a claim of executive privilege, the Court is constantly aware that the public interest requires judicial support of executive and administrative officials in the faithful execution of their public trust. In the instant case, however, the grievance before the Court stems from the admitted misconduct and perversion of power by governmental officials, rather than a legitimate determination of policy. The public has a fundamental interest in preventing such illegal acts which strike at the foundation of democratic government. The government, in this case, has not only admittedly invaded the Plaintiff's private quarters by lengthy secret electronic surveillance, but also possibly undertook the investigation of the Plaintiff for political purposes.[2] Any evidence which concerns the government's illegal acts

---

2. See Plaintiff's Motion for Discovery of Documents and to Compel Answers to Questions filed September 28, 1973 with attached *Washington Star-News* article, "FBI and Politics: Longtime Link", page A–1, August 15, 1973, in particular the continuation of the article at A–6.

are not privileged. Rosee v. Board of Trade, *supra*; United States v. Procter & Gamble, *supra; cf.*, Sterling Drug v. FTC, 146 U.S.App.D.C. 237, 450 F.2d 698 (1971). Likewise, any evidence which refutes this allegation can not be privileged. *See* United States v. Procter & Gamble Co., *supra*, 25 F.R.D. at 490.

 The Defendant also claims that disclosure of these documents would be detrimental to the public's interest in effective law enforcement since the documents are part of an "investigatory file." This argument is without merit in this case. The sole basis for nondisclosure of investigatory files lies in Section 552(b)(7) of Title 5 of the United States Code (Freedom of Information Act). The specific exemptions under the Freedom of Information Act are extremely narrow, and documents classified as investigatory files are not *per se* exempt. Bristol-Myers Co. v. FTC, 138 U.S.App.D.C. 22, 26, 424 F.2d 935, 939, cert. denied 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970). The legislative purpose for the exemption was to prevent premature disclosure of files "prepared in connection with related Government litigation and adjudicative proceedings." H.R.Report No. 1497, 89th Cong., 2d Sess. at 11, U.S.Code Cong. & Admin. News 1966, pp. 2418, 2428. The question then is whether the documents relate to that which can be fairly described as an enforcement proceeding. *Bristol-Myers, supra.* In this case, the investigation was admittedly not related to a law enforcement proceeding, but was conducted simply for "intelligence purposes." *See* Attorney General's Affidavit, page 3 par. 5. Furthermore, it has been over ten years since the surveillance has been conducted, and the Defendant has not brought an action against the Plaintiff and admits all investigation for any possible action has been long since concluded. Under these circumstances, the investigatory file exemption is obviously not applicable.

There can be no harm to effective law enforcement by allowing the Plaintiff access to the documents ordered to be produced. In criminal cases, which have considerably more stringent discovery rules, the courts have required disclosure of information obtained by illegal electronic surveillance when it would assist the defense. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L. Ed.2d 176 (1969); *see also* Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). The information sought here is necessary for the just adjudication of this case. It is solely within the possession of the party whom the Court has found liable to the Plaintiff. The Defendant can not now attempt to escape its liability by withholding necessary information, information relating to its misconduct and illegal acts.

 Having made a careful balance of the interests involved, the Court finds the need for the evidence outweighs any arguable harm that could result from disclosure. As the Defendant has failed to comply with the Court's order without a recognizable claim of executive privilege, the Court's only recourse is to impose sanctions under Rule 37 of the Federal Rules of Civil Procedure. Therefore, pursuant to the authority of Rule 37(b)(2)(A), the Court shall deem the following facts as established for the purposes of this case: (1) That the FBI reports or the information contained therein caused the Plaintiff to lose his employment as a Washington representative for major national corporations; (2) That the FBI reports or the information contained therein have destroyed the Plaintiff's livelihood and permanently impaired his ability to obtain employment; (3) That the FBI reports or the information contained therein have greatly damaged the Plaintiff's name and reputation and have caused him the loss of friends and business associates; and (4) That the FBI reports or the information contained therein have caused the Plaintiff great mental pain and suffering, embarrassment and humiliation.

The Court shall deny the Plaintiff's Motion for a Protective Order in that the Plaintiff has not made a sufficient showing of good cause in light of the Court's rulings today and earlier this month. The Motion is denied, however, without prejudice to the Plaintiff's renewal of the same.

An Order of even date is entered in accordance with this opinion.