Abdeen M. JABARA, Plaintiff,

v.

Clarence KELLY, Director of the Federal Bureau of Investigation, Department of Justice, Washington, D. C., et al., Defendants.

Civ. A. No. 39065.

United States District Court,
E. D. Michigan, S. D.

March 21, 1974.

John H. F. Shattuck, Melvin L. Wulf, American Civil Liberties Union, New York City, Ronald J. Reosti, Detroit, Mich., for plaintiff.

Henry E. Petersen, Asst. Atty. Gen., Edward ·S. Christenbury, Benjamin C. Flannagan, Attys., Dept. of Justice, Washington, D. C., Ralph B. Guy, Jr., U. S. Atty., Michael D. Gladstone, Asst. U. S. Atty., Detroit, Mich., for defendants.

## OPINION

RALPH M. FREEMAN, District Judge.

This is a consolidated motion by the plaintiff, Abdeen M. Jabara, to (1) compel answers to interrogatories pursuant to F.R.Civ.P. 37(a)(2); and (2) to determine the sufficiency of objections to request for admissions pursuant to F.R.Civ.P. 36(a).

Defendant Clarence Kelly is the Director of the Federal Bureau of Investigation; defendant Richard G. Kleindienst was the Attorney General of the United States; defendant Neil G. Welch is the Special Agent-In-Charge of the Detroit office of the Federal Bureau of Investigation; and defendants Winston Churchill, John Doe, and Richard Roe are special agents in the Detroit office of the FBI.

The defendants' objections to the disputed interrogatories and request to admit is that through them the plaintiff seeks to learn if information exists or to obtain information "that is contained in the investigative files of the Federal Bureau of Investigation, which, in the public interest, is protected from disclosure." However, in response to the plaintiff's suggestion that the court might examine the information *in camera* before ruling on the motion, the defendants have supplied this court with an *in camera* affidavit which the court has examined. Defendants contend that analysis of this affidavit should lead the court to the conclusion that "(d)iscovery of the information relating to plaintiff contained in the investigative files of the Federal Bureau of Investigation could reasonably result in a loss of anonymity of government informers, a compromise of on-going federal investigations, and the exposure of tactical intelligence which will jeopardize current investigatory techniques," and that these consequences are against the public interest.

The plaintiff filed this action seeking declaratory and injunctive relief, alleging that the defendants have been investigating him and gathering information about him in violation of his First, Fourth, Fifth and Ninth Amendment rights. Upon information and ·belief, it is alleged that information concerning the plaintiff has been gathered "by overt and covert surveillance," "by the monitoring of his telephone through the use of electronic surveillance devices," "by the monitoring of his speaking engagements by informants and agents who are official and not official employees of the FBI," and "by the investigation of his bank accounts without legal process and without his prior knowledge and approval."

Plaintiff also alleges, on information and belief,

that one of the purposes and consequences of the collection and maintenance of such information concerning the lawful, peaceful, and constitutionally protected activities of the

Plaintiff is to harass and intimidate him and to discourage him from exercising his constitutional rights of free speech and free association, by invading, damaging and threatening to damage his reputation, adversely affecting his employment as a reputable attorney, and by other ways. ·

Mr. Jabara is a native born American citizen of Arab extraction who practices law in the state of Michigan. In 1972 he served a one-year term as the elected president of the Association of Arab-American University Graduates, Inc., which is, according to the plaintiff, "a non-profit, tax-exempt national organization, devoted to the dissemination of knowledge about the Middle East and the improvement of the bonds between and among Americans of Arab origin and the Arab and American people." The plaintiff was also one of the founders of this organization. According to the plaintiff's affidavit, since 1967, he has been "actively and peacefully engaged in public speaking, writing, publishing, organizing, and otherwise explaining the facts and issues concerning what has variously been termed the Palestine problem, the Arab-Israeli conflict, or the Middle East conflict." Apparently it is because of these activities that the plaintiff believes the FBI has been investigating him. In support of this belief, the plaintiff has submitted several news stories concerning stepped-up investigations of Arab-Americans and Arab aliens in the United States.

In order to obtain information which the plaintiff says is vital to the proof of his claim, he served interrogatories and requests to admit on the defendants. The defendants responded to some of the questions but refused to answer others on the ground that the information was privileged. The interrogatories and requests for admission objected to seek to find out the purpose, result and details of the alleged investigations. The defendants have admitted that they or their agents have collected information concerning the plaintiff or his activities since 1967 but assert that their conduct was within the scope of their legitimate authority.

There are circumstances in which the disclosure of information in the possession of the government would be inimical to the public interest. However, in an unpublished opinion, District Judge Vanartsdalen of the Eastern District of Pennsylvania, made the following observations:

> Governmental privilege is a device which must be exercised with the utmost fairness and caution. 'While the individual should be entitled to information establishing the foundation and crux of his law suit, the government should not be required to divulge information which would be injurious to the public security. The court, therefore, must determine the primacy of the interests of the government versus those of the individual balancing the necessity of the individual in obtaining the information against the governmental need in maintaining the secrecy of the information.
>
> [Philadelphia Resistance, et al v. John N. Mitchell (E.D.Penn, #71–1738, Aug. 3, 1972)]

While prior decisions in other cases offer a guideline in the balancing of these interests, each case must be decided on its own merits. The balancing of interests is a fragile exercise and circumstances in a specific case may tip the scales in the direction opposite . than if the particular circumstances were not present. As the Supreme Court said in United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953),

> In each case, the showing of necessity which is made will determine how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate. Where there is a strong showing of necessity, the claim of privilege should not

be lightly accepted, but even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake. *A fortiori*, where necessity is dubious, a formal claim of privilege, . . . will have to prevail.

In reviewing the cases cited by the parties in support of their respective positions, the court has kept in mind the specific features of the case at bar: (1) The plaintiff is alleging misconduct on the part of the government and its agents; (2) The plaintiff is not seeking the records of the government through a *subpoena duces tecum*, but is merely asking for information about government activity which information is to be found in the files of the FBI; (3) The plaintiff contends that the conduct of the defendants is chilling his First Amendment rights and this court notes that these rights have traditionally been accorded great weight by the courts in the process of balancing interests; (4) The issues of this case may concern the foreign relations of the United States; and (5) The defendants have refused to disclose whether or not the investigation of the plaintiff is an ongoing investigation of criminal activity.

Before discussing previous cases that have dealt with the problem before this court, it should be noted that several of these cases concern the Freedom of Information Act, 5 U.S.C. § 552. Although defendants have not specifically raised the Freedom of Information Act as a ground for withholding information, and some of the cases discussed are not exactly on point, the principles enunciated in these cases are pertinent to the matter at hand.

The defendants have directed the court to Black v. Sheraton Corporation of America, 50 F.R.D. 130 (D.D.C.1970). In this case, an FBI agent refused to answer questions concerning the extent of the government's investigation of the plaintiff at the time of the electronic surveillance complained of. The government had previously provided the plaintiff with copies of all documents in the FBI files which contained information received from the surveillance. After balancing the interest, Judge Sirica decided that the government did not have to provide the plaintiff with the requested information. Noting that the government was subject to the rules of discovery just as a private citizen would be, the court found that the public policy in favor of maintaining the secrecy of FBI investigative reports took precedence. The court stated as follows:

It is thus apparent that the information sought by the plaintiff comes within the government's right to protect information which, if released, might be harmful to the public interest. The results of investigations of alleged criminal activity are by their nature the type of information that the public interest requires be kept secret. Given this finding that the public interest favors the continued secrecy of the information in the FBI files, the Court, in the exercise of its discretion on a motion to compel answers, may consider whether the information is necessary for the proof of the plaintiff's case.

As the government had previously supplied the plaintiff with all of the information obtained directly from the surveillance complained of, the court found that the documents sought were not necessary to the plaintiff's case so as to outweigh the governmental need for secrecy. In addition, the court noted that the government was willing to have its agents deposed with respect to whether or not they were furnished with information from the electronic surveillance.

However, in a recent decision in this case, Judge Richey found that the suggested depositions proved to be an inadequate method of obtaining the information and ordered the documents disclosed

428

as necessary for the determination of damages resulting from dissemination of illegally obtained information. Black v. Sheraton Corp. of America, 371 F.Supp. 97 (D.D.C.1974).

Another case of interest is Capitol Vending Co. Inc. v. Baker, 35 F.R.D. 510 (D.D.C.1964). In this case the plaintiffs claimed that the defendants had wrongfully and illegally diverted certain business and contracts of the plaintiff to another and a rival corporation. The plaintiff served a subpoena *duces tecum* on the Attorney General requiring him to produce "voluminous" documents relating to the activities of the defendant Baker. Neither the government nor any of its agents were parties to this suit. The Attorney General moved to quash the subpoena on the grounds of executive privilege since the materials were in the FBI files and were obtained through a continuing investigation of possible violations of criminal laws. Premature exposure, it was alleged, would prejudice any subsequent prosecution.

The court noted that the government has certain privileges not accorded to private individuals, such as a privilege as to matters involving national defense or foreign relations with other governments. Judge Holtzoff also felt that there was a privilege with respect to documents which the government was using in connection with a criminal investigation. The court took the assertion of executive privilege at face value and specifically refrained from ordering an *in camera* inspection. The subpoena was quashed but the court said that the Justice Department could not keep the records indefinitely and if the investigation was prolonged for an unreasonable length of time, the subpoena would be renewed.

In Zimmerman v. Poindexter, 74 F. Supp. 933 (Hawaii, 1947), the plaintiff brought an action for wrongful imprisonment against several defendants, one of whom was an agent of the FBI. The plaintiff alleged that the defendants had conducted themselves in excess of their lawful authority. A subpoena *duces tecum* was issued requiring the Commanding General of the Army to produce the files pertaining to the imprisonment of the plaintiff. The files contained confidential investigative reports of the FBI and the Attorney General asserted that such reports were privileged.

The court noted that one major issue was whether lawful official authority had been transcended in the dealings of the defendants and that "without the appropriate production of the written memorials of the acts and conduct of the parties during the period covered by the pleadings on file, the opportunities for factual suppression and surprise at the trial are facilitated." The court went on to say that "(s)uch eventualities should be avoided by the court if possible after considering all of the relevant interests legally and prudently to be considered by the court in specific situations in any act of the kind before the court." It was felt that as alleged actionable deviation from official conduct was brought in issue, it was appropriate that all documents which would clarify the issue should be brought before the court. Judge McCormick concluded that "to sustain the assertion of privilege of concealment under the specific situation before the court would be tantamount to abdicating an inherent judicial function of determining the facts upon which the admissibility of evidence in a case depends." Thus, the court ordered that the documents be delivered to the court in a sealed container, presumably for a determination of admissibility at trial. Unlike the *Capitol Vending Co.* case, supra, the court refused to uphold the assertion of privilege at face value.

A case of particular interest is Wood v. Breier, 54 F.R.D. 7 (E.D.Wis.1972), in which Chief Judge Reynolds made a distinction between factual material and that of a policy discussion nature. This was a civil rights case claiming that

policemen struck and arrested the plaintiff without cause while the police were attempting to control a gathering in one of the Milwaukee parks. The plaintiff sought to discover the internal investigation file made by the police department into the injury of the plaintiff. After reviewing the file *in camera*, the court concluded that all of the material was of a factual as opposed to a policy discussion nature and that nowhere was there any recommendations made as to future actions or criticisms of past actions. The court also noted that the investigation went into the incident which was the basis of the plaintiff's lawsuit and that therefore the file was highly relevant.

In order to be sustained in their invocation of privilege, the court said that the government had to overcome two major congressional and judicial policy decisions. The first was the broad federal mandate for discovery in all civil suits. The second policy was that which was reflected in § 1983 which was the basis of the plaintiff's suit. The court articulated the policy behind this section as follows:

Each citizen "acts as a private attorney general who 'takes on the mantel of the sovereign,'" guarding for all of us the individual liberties enunciated in the Constitution. Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all. Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden. (Citations omitted)

Noting that given the case by case balance required in these cases, *stare decisis* carried less weight than it normally would, the court went on to say that the majority of cases which had previously addressed the problem of privilege had found that "while in general discovery should be barred from on-going investigations, once the investigation and prosecution have been completed discovery should be permitted," and that "(e)ven this balance, however, is not absolute and there may be occasions where discovery of a particular on-going investigation would be proper." Judge Reynolds went on to say that the investigation at hand had long been completed and there was no indication that any prosecution was contemplated; but that at any rate, the privilege extended to advisory opinions but not to factual reports and summaries. Finally the court said that even if the privilege were applicable, "when the basis of a particular suit arises from the alleged misconduct or perversion of power by a government official, . . . discovery may well be proper." In denying the government's motion for a protective order suppressing discovery, the court concluded that while the defendant's arguments might have some merit, "they must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action and of the federal rules of discovery meant to insure that no relevant fact remain(s) hidden."

Another case of interest is Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D.Pa. 1973). Plaintiffs brought a civil rights case against named police officers who allegedly shot and killed their husband and father. Through discovery, the plaintiffs sought the right to inspect and copy witnesses' statements to police and the reports of the police investigations made in the aftermath of the shooting. The defendants objected to the discovery on the grounds of executive privilege. The court listed the following factors to be considered in balancing the interests to determine if the government should be required to disclose these materials:

(1) the extent to which disclosure will thwart governmental processes by dis-

couraging citizens from giving the government information; .

(2) the impact upon persons who have given information of having their identities disclosed;

(3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;

(4) whether the information sought is factual data or evaluative summary;

(5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

(6) whether the police investigation has been completed;

(7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation;

(8) whether the plaintiff's suit is non-frivolous and brought in good faith;

(9) whether the information sought is available through other discovery or from other sources; and

(10) the importance of the information sought to the plaintiff's case.

After considering these factors in regard to the specific material requested by the plaintiffs, the court ordered the government to produce some of the information.

Finally, a most instructive case is Philadelphia Resistance v. John N. Mitchell, #71–1738 (E.D.Pa.1972). In this case Judge Vanartsdalen issued two unreported opinions. The first was issued August 3, 1972 which required the government to submit documentary information for *in camera* consideration. The second opinion, which was issued on December 27, 1972 after the court had considered the documents, ordered the government to answer certain of the plaintiff's interrogatories while upholding their claim of privilege as to other interrogatories.

Like the case at bar, the plaintiffs accused the defendants of illegal and unconstitutional surveillance, harassment and intimidation. The suit arose as a result of an investigation conducted after government documents were stolen during a burglary of the FBI office in Media, Pennsylvania. The plaintiffs submitted certain interrogatories which the defendants refused to answer, principally on the grounds that the information was part of the files of an on-going criminal investigation for law enforcement purposes. In order to determine if the circumstances of the case were appropriate for the invoking of privilege, the court ordered the government to produce documents for *in camera* consideration.

After examination of the *in camera* exhibits, the court concluded that "the government (could) properly assert a claim of privilege since it possess(ed) information rendering the plaintiffs as subjects of a valid ongoing investigation for law enforcement purposes." Judge Vanartsdalen then individually examined the plaintiff's interrogatories to determine if the privilege applied to each of them. In doing so, the court balanced the necessity of the moving party in securing this information against the nature of the information and the governmental need to withhold the material.

The court noted that the government was the sole source of the information and that while the plaintiffs could not rummage through FBI files, they were entitled to disclosure if the information was necessary to the presentation of their case and would not jeopardize the government's on-going criminal investigation.

■ While at first blush this case appears to be "on all fours" with the case at bar, this court notes that in the present case the defendants have refused to indicate to the plaintiff whether or not the investigation of Mr. Jabara was part of an on-going criminal investiga-

tion. However, in the final paragraph of their response to this motion, defendants assert that disclosure of the requested information would result in a compromise of on-going federal investigations. Regardless of whether this distinction is significant or insignificant and recognizing that the courts are by no means in agreement as to applicability of the privilege asserted here, this court believes that the procedure employed by Judge Vanartsdalen is the proper procedure in cases of this type. A reading of the opinion indicates that the court exercised its discretion prudently with the needs of both parties clearly in mind.

■ This court has carefully examined the *in camera* exhibit of the defendants. Without intending to express any opinion as to the legality or constitutionality of the governmental action with regard to Mr. Jabara, the court is of the opinion that the investigation which the defendants admit they were conducting was conducted pursuant to legitimate governmental concerns. The court wishes to emphasize that this is an area in which this opinion must tread softly for it may involve issues of sensitive foreign relations. The court also wishes to note that this case also involves issues of our most highly prized rights, the right of free speech and the right to freely assemble. It cannot be emphasized enough that the balancing process involved in this case is extremely difficult. While a decision of whether or not the government's "compelling state interest" is sufficient to overcome the alleged chilling effect of the plaintiff's First Amendment rights must await trial and further argument, this court concedes that the decision will not be an easy one.

■ The defendants maintain that the plaintiff has not made the requisite showing of necessity in order to overcome the claim of privilege. However, a reading of the complaint and the interrogatories and request for admissions, convinces this court that without at least some of the information sought, the plaintiff would be hardpressed to either prove his claim or be satisfied that the government had not unlawfully infringed upon his rights. One of the only ways for a person to secure his rights against alleged governmental infringement is to ask the court to insure these rights. This is not an invitation for every citizen to go on a fishing expedition to make sure that the government is not overstepping its bounds. However, when as here, a person has non-frivolous grounds to believe that his rights are in danger, the courts must aid the individual in his quest for the truth.

■ In balancing the plaintiff's need for the requested information, this court has kept in mind the fears of the government should disclosure be ordered: (1) Loss of anonymity of government informers; (2) a compromise of on-going federal investigations; and (3) exposure of tactical intelligence which will jeopardize current investigatory techniques.

After ascertaining that the government has properly invoked privilege as a justification for its refusal to answer certain interrogatories and requests to admit, the court now turns to the task of determining whether this privilege should apply to the specific requests for information. Of eleven interrogatories, the defendants initially responded to interrogatories 1, 2 and 3, but have since withdrawn their answer to #2 as being privileged. In their responses, the defendants have stated that neither they nor their agents have made available any information concerning the plaintiff to any domestic or foreign Jewish, Zionist, or Israeli organization or government. The defendants have also supplied the name of the government agent who attempted to interview the plaintiff.

Of seven requests for admissions, the defendants have answered six. Defendants gave more specific denials as to

their communication with the organizations and governments mentioned in the interrogatories. Defendants also admitted that without the issuance of legal process, they made inquiries to ascertain the existence and location of the plaintiff's bank accounts, but denied that they sought or obtained information concerning the use, source or contents of the bank accounts. Defendants admitted that they have collected information concerning the plaintiff since 1967. They have also stated that neither they nor their agents have obtained a judicial order authorizing the monitoring of plaintiff's telephone conversations. But they refused to respond to one statement.

■ Turning now to the specific interrogatories and the requested admission, the court makes the following disposition:

*Interrogatories:*

*2. Have defendants or their agents at any time solicited, received, or otherwise obtained any information concerning plaintiff or plaintiff's activities from any domestic or foreign Jewish, Zionist, or Israeli organization, association, agency, office, or governmental entity?*

The government initially answered this interrogatory in the negative. But they have since withdrawn their answer and now claim that this interrogatory seeks to obtain information which, in the public interest, is protected from disclosure. Applying the above discussed criteria, the court orders the defendants to answer this question.

*If so, for each such organization, association, agency, office, or governmental entity, please state:*

*a. The name or names of the organization, association, agency, office, or governmental entity.*

*b. The name, addresses, and position of the individual or individuals in each such organization, association, agency, office, or governmental entity with* *whom defendants had contact concerning plaintiff.*

Balancing the interests involved in this case, the defendants need not answer 2(a) and (b).

*c. The date or dates such contacts took place between defendants or their agents and such individual or individuals.*

The court can see no harm in the defendants answering this question, and it is so ordered.

*d. The exact information which such organization, association, agency, office, or governmental entity obtained, examined, or was supplied by defendants or their agents to such person or persons or organization.*

This interrogatory is not consistent with the basic question, and, for that reason, the defendants need not answer.

*4. State whether defendants' investigation of plaintiff is an ongoing investigation of criminal activity.*

The government is ordered to answer this question.

*If so, please state:*

*(a) The time and date said investigation began.*

The government shall answer.

*(b) The statutory offense or offenses involved.*

The government need not answer.

*(c) A factual description or descriptions of the alleged offense or offenses.*

The government need not answer.

*5. With respect to the plaintiff, please state whether defendants, their agents, employees, or predecessors in office have at any time engaged in any method (including but not limited to wiretap or other electronic surveillance devices and laser beam detection) of obtaining the contents of conversations*

*a. To which plaintiff was a party;*

The government shall answer.

*b. Which originated on the home or business premises of plaintiff.*

The government shall answer.

*c. In which any acts or activities of plaintiff were discussed.*

The government shall answer.

*d. The date, time, and place such surveillance referred to was made.*

The government shall answer as to the time and date, but not as to place.

*6. With respect to each occasion on which the surveillance referred to in Interrogatory 5 above occurred, please state the reason(s) why such surveillance was undertaken.*

The government shall not have to answer this question. A similar question was asked in the *Philadelphia Resistance* case which was held to be privileged. This result is in line with the cases saying that policy as opposed to factual data need not be disclosed.

*7. With respect to each occasion on which the surveillance referred to in Interrogatory 5 above occurred, please state the legal basis and authority for conducting such surveillance.*

This question need not be answered for the same reason as Interrogatory #6.

*8. With regard to defendants' answer to Paragraph No. 7 of plaintiff's Complaint, please state:*

*a. The date, place, and information obtained by defendants, their agents, or employees at each and every speaking engagement of plaintiff.*

The government shall answer.

*b. The name, address, and position of each person who obtained information.*

The government shall answer as to those persons known to others as government employees but need not answer as to informers and non-governmental employees.

*9. Whether defendants or their agents or employees spoke to or otherwise communicated with a person or persons other than agents and employees of defendants concerning plaintiff.*

The government shall answer.

*10. If the answer to Interrogatory number nine is yes, please state:*

*a. The name, address, and position of each and every person other than agents and employees of defendants to whom defendants or their agents and employees spoke or otherwise communicated with concerning plaintiff.*

The government need not answer.

*b. The specific information concerning plaintiff or his activities which was so communicated.*

The government need not answer.

*c. The reason or reasons said information concerning plaintiff or his activities was so communicated.*

The government need not answer.

*d. The time, date and place of each and every communication.*

The government shall answer as to time and date, but need not answer as to place.

*11. With regard to defendants' answer to Paragraph 8 of plaintiff's Complaint, please state:*

*a. The name and address of each bank from which defendants sought information concerning plaintiff's bank accounts.*

The government shall answer.

*b. The name and position of the individual or individuals in each such bank with whom defendants had contact concerning plaintiff's accounts.*

The government shall answer.

*Admission #7*

*Defendants have electronically or otherwise monitored phone conversations of which plaintiff was one of the parties to the conversation.*

The government shall answer.